See also, D.C.Cir., 463 F.2d 788.

**The COMMITTEE FOR NUCLEAR RESPONSIBILITY, INC., et al., Appellants-Petitioners,**

v.

**Glenn T. SEABORG et al., and Atomic Energy Commission, Appellees-Respondents.**

**No. 71–1869, Misc. 3717.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 3, 1971.

---

Messrs. Harold P. Green, Washington, D. C., and David Sive, New York City (by special leave of court) were on the pleadings for appellants-petitioners.

Asst. Atty. Gen. Shiro Kashiwa and Messrs. Edmund B. Clark, Thomas L. McKevitt and Peter R. Steenland, Attys., Department of Justice, Washington, D. C., were on the pleadings for appellees-respondents.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

Plaintiffs, conservation groups seeking to enjoin an underground nuclear explosion (code-named Cannikin) on Amchitka Island, Alaska, appeal from the District Court's denial of a preliminary injunction, and seek leave to appeal under 28 U.S.C. § 1292(b) from the District Court's order resolving certain questions of discovery. Plaintiffs have pressed their case with increasing urgency in court as the proposed detonation becomes ever more imminent. On October 28, 1971, we denied plaintiff's motion to stay the test, but affirmed the District Court's order requiring the Government to produce for *in camera* inspection certain documents which plaintiffs had been attempting to discover for months. Following *in camera* inspection on October 30, the District Court entered an order on November 1, which directed that some of these documents be released to plaintiffs (per Schedule A), but upheld the Government's objection to the release of other documents (in Schedule B). The Government does not seek to appeal, under § 1292(b), the rulings requiring disclosure.

Plaintiffs immediately appealed from the denial of a preliminary injunction. They move for summary reversal and stay. We deny that motion.

With regard to the discovery order, we have concluded that it would be inappropriate to entertain an appeal on this interlocutory matter at this time. The application for leave to appeal is denied.

I

The denial of a preliminary injunction was accompanied by findings of fact and conclusions of law in which the District Court indicated, *inter alia,* (1) that the Impact Statement issued by the Atomic Energy Commission (AEC) satisfied all of the requirements of the National Environmental Policy Act (NEPA), 42 U. S.C. § 4331 *et seq.* (1970); (2) that none of the documents examined *in camera* by the District Court contained discussion of environmental hazards of substance not "alluded to" in the AEC's Impact Statement; (3) that defendants have complied with NEPA and all applicable law and are not threatening to engage in illegal action; and (4) that the courts lack jurisdiction to enjoin this "presidential decision."

While we do not modify the order of the District Court, we do not accept the propositions upon which it relied. In our view the case does present a substantial question as to the legality of the proposed test. But it does not necessarily follow that plaintiffs are entitled to an injunction against the test.

It is distressing that the case has come to require even limited judicial consideration at a moment when the time available for that consideration is even more limited. Although the action was begun four months ago, and plaintiffs moved promptly for discovery, this discovery was ordered discontinued. It is only within the past few days that important documents were produced by the Government. We are not to be taken as saying this in a spirit of assess-

ment of blame. The Government's counsel were entitled to press its contentions —which we subsequently rejected—first that NEPA had been suspended, and second that the Executive had an absolute constitutional privilege to withhold from the courts such documents as the Executive determined to withhold, even though the courts specifically excluded any call on documents in the area of military or diplomatic secrecy.

The fact remains, however, that judicial consideration at this time has been drastically foreshortened. We have examined *in camera* the papers presented to the District Court, including the papers which the District Court did not disclose. We are left with *difficult* questions about the validity of the AEC's environmental statement. But a hurried review of several hundred pages of technical documents cannot provide a satisfactory basis for resolving this litigation.

Our failure to enjoin the test is not predicated on a conviction that the AEC has complied with NEPA in setting forth the dangers of environmental harm. The NEPA process—which is designed to minimize the likelihood of harm—has not run its course in the courts. We are in no position to calculate the dangers from the Cannikin test.

As to the harms which will accrue if the test is enjoined, they were presented to us by the Government in a paper filed October 26, 1971. The Government indicated that the process of stemming the test hole was scheduled to begin that day, and it did apparently begin on schedule. The Government's paper stated:

> Stemming involves putting gravel and other materials down the test hole on top of the nuclear device. This prevents release of radioactive materials into the atmosphere. Stemming makes it impractical to recover the test device. If the device were not detonated at full yield, it would probably be destroyed with a non-nuclear charge.

If we were to start stemming and then discover we could not conduct the full-yield test, we would be prevented from another test for at least a year since there is not another device or test hole readily available. Such a delay would prevent the deployment of the Spartan interceptor in the Safeguard system by at least a year or force us to enter into production of the Spartan warhead when it has not been fully tested. Moreover, the costs of preparation for this test, which are not recoverable if the test does not proceed, would be at least 118 million dollars. Moreover, an additional 70 to 120 million dollars would be required to prepare again for another test.

The risks increase substantially each day because the weather deteriorates in the Amchitka area from this time on; reasonably good weather is necessary for proper observation of the test by ground stations and for other supporting operations. Also, the device is already at the bottom of the test hole and any delay increases the risk of mechanical problems. For instance, the device is protected from the environment at 6,000 feet depth by a life-support system which has a limited life. In short, a period of bad weather combined with technical problems, both of which are unpredictable, could prevent the test. Each day of delay substantially increases these risks.

The Government also indicated that an injunction, and the resulting disruption of the Safeguard-ABM missile system, could well jeopardize the Strategic Arms Limitation Talks.

While the Government's assertion of monetary damage from an injunction is not minimal, it does not weigh as heavily with us as its assertions of potential harm to national security and foreign policy—assertions which we obviously can not appraise—and given the meager state of the record before us, we are constrained to refuse an injunction. *Cf.* Reynolds v. Sims, 377 U.S. 533, 585, 84

S.Ct. 1362, 12 L.Ed.2d 506 (1964); Note, Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1005–1008 (1965). While we deny preventive relief, it should be clear that plaintiffs may yet prevail in their claim that the AEC failed to comply with NEPA in approving the Cannikin test.

## II

■ Plaintiffs have also filed a motion for leave to appeal under 28 U.S.C. § 1292(b) from the District Court's order withholding certain documents from discovery. The order was predicated on a finding, made after an *in camera* investigation, that the documents in question consisted of intra-executive recommendations and deliberations whose confidentiality was required in order to maintain the integrity of the Executive's decision-making process.

Section 1292(b) permits an appellate court to grant an interlocutory appeal when resolution of the questions presented would materially advance the ultimate termination of the litigation. The transcript reveals the District Court's effort to apply our ruling of October 28. What is now involved on review is not so much a matter of stating controlling principles as reviewing their application. We cannot resolve this issue in the short span of time before the detonation of the blast. Whatever the consequences of the detonation, its mere occurrence will not moot the issue of the Government's compliance with laws designed to insure that environmental factors involved in a decision of this magnitude are considered and set forth fully and candidly, pursuant to the Congressional mandate, for the information of the executive and legislative branches and the public. Review of the District Court's order withholding certain documents will await review of its final disposition of the case.

The plaintiffs' motion for summary reversal of the order of the District Court denying the motion for a preliminary injunction is denied. We also deny plaintiffs' application for leave to appeal the order of the District Court withholding certain documents from plaintiffs on the grounds of privilege.

So ordered.