**ETHYL CORPORATION, Appellee,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, Appellant (two cases).**

**Nos. 72–2355, 72–1005.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1973.

Decided May 10, 1973.

William Kanter, Atty., U. S. Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., Brian P. Gettings, U. S. Atty., and Walter H. Fleischer, Atty., U. S. Dept. of Justice, on brief) for appellant.

E. Milton Farley, III, Richmond, Va. (Joseph C. Carter, Jr., David F. Peters, T. S. Ellis, III, Carl W. Tobias, Hunton, Williams, Gay & Gibson and Frederick P. Warne, Richmond, Va., on brief) for appellee.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The Administrator of EPA [1] resists an application by Ethyl Corporation filed under the Freedom of Information Act,[2] to require the production of seven documents containing medical and scientific data and considered by him in connection with the issuance of proposed lead regulations under the Clean Air Act.[3] He contended initially that the documents were exempt from production by the terms of Section (b)(5) of the Act. When the District Court, after hearing testimony and considering affidavits submitted, expressed the intention to require production of the strictly factual parts of the documents, the Administrator requested a continuance in order to permit him to consider whether to claim "executive privilege". The continuance was granted and the Administrator did file thereafter with the Court an affidavit in which he claimed "executive privilege". Despite this claim by the Administrator, the District Court examined the documents *in camera*, determined that parts thereof contained purely factual material not inextricably intertwined with policy-making processes, and ordered the same produced. The Administrator has appealed and, pending appeal, secured a stay of the order.

We affirm.

The Freedom of Information Act was intended to express in statutory form the firm obligation of governmental agencies to make disclosure to "any person" of identifiable information and facts in their possession, limited only by certain specific exemptions.[4] Specifically, it denied the federal agency any

---

1. Environmental Protection Agency.

2. 5 U.S.C. § 552.

3. 42 U.S.C. § 1857f–6c.

4. Sterling Drug, Inc. v. F.T.C. (1971) 146 U.S.App.D.C. 237, 450 F.2d 698, 703.

right to "refuse disclosure of materials covered by the Act for any reason other than one contained in the exclusionary section of the legislation."[5] The legislative history of the Act makes it clear that the obligation to produce thereby mandated is to be construed *broadly* and the exemptions from such obligation *narrowly.*[6] In short, the Act makes disclosure the rule and secrecy the exception. And, lest the Congressional purpose be thwarted by the inevitable tendency of the agency towards secrecy, Congress, discarding the usual principle of deference to administrative determinations, provided for any "aggrieved citizen" denied disclosure a judicial remedy in the District Court, which was directed to "determine the matter *de novo*", with the burden on the agency itself "to sustain" its claim for exemption.[7] By such provision, Congress imposed on the federal courts "the responsibility of determining the validity and extent of the claim [of exemption], and insuring that the exemption is strictly construed in light of the legislative intent." [8]

The specific exemption on which the Administrator relies authorizes non-disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been authoritatively construed as differentiating in treatment between "materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other",[9] between material that deals "solely with matters of law or policy" and those that are "matters of a factual nature".[10] The Act never "intended to place 'factual material' within the coverage of the fifth exemption." [11] Simply because a document contains both purely factual material and "materials reflecting deliberative or policy-making processes" does not render the document automatically exempt from discovery. Congress never "intended to exempt an entire document merely because it contained some confidential information." [12]

5. Hawkes v. Internal Revenue Service (6th Cir. 1972) 467 F.2d 787, 792, n. 6.

6. Soucie v. David (1971) 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080; Wellford v. Hardin (4th Cir. 1971) 444 F.2d 21, 25; Fisher v. Renegotiation Board (1972) 153 U.S.App.D.C. 398, 401, 473 F.2d 109, 112.

7. Section 552(a)(3), 5 U.S.C.; Soucie v. David, *supra.*

8. Bristol-Myers Company v. F.T.C. (1970) 138 U.S.App.D.C. 22, 424 F.2d 935, 938, cert. den., 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52.

9. Environmental Protection Agency v. Mink (1973) 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119.

10. Ackerly v. Ley (1969) 137 U.S.App.D.C. 133, 420 F.2d 1336, 1341, n. 7.
    Wu v. National Endowment for Humanities (5th Cir. 1972) 460 F.2d 1030, cited by the Administrator, illustrates the distinction. In that case, the contested documents consisted of "opinions, not facts, and are thus protected by exemption (5)" (at 1033). The decision, however, very clearly recognized that "purely factual material, * * * is not protected from disclosure * * *." (at 1032)

11. Consumers Union of U. S., Inc. v. Veterans Admin. (D.C.N.Y.1969) 301 F. Supp. 796, 805 (appeal dismissed as moot 2 Cir., 436 F.2d 1363).
    See, also, Bristol-Myers Company v. F.T.C., *supra*, at 939 (424 F.2d):
    "Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.'"

12. Grumman Aircraft Engineer Corp. v. Renegotiation Bd. (1970) 138 U.S.App. D.C. 147, 425 F.2d 578, 580; Simons-Eastern Company v. United States (D.C. Ga.1972) 55 F.R.D. 88, 89; Fisher v. Renegotiation Board, *supra*, at 115 (473 F.2d); *see, also*, Sterling Drug, Inc. v. F.T.C., *supra*, at 704 (450 F.2d), where the Court remanded the proceedings to permit the District Court to review the materials in question and determine whether it contained factual material that was properly discoverable.
    In Wellford v. Hardin, *supra*, at 770 (315 F.Supp. 768), the Court said:
    "It is a violation of the Act to withhold documents on the ground that parts are exempt and parts non-exempt. In that event, 'suitable deletions' may be made; * * *."

And this construction of the exemption was given authoritative approval in *Mink* when Justice White said that "in the absence of a claim that disclosure would jeopardize state secrets, see United States v. Reynolds, 345 U.S. 1 [73 S. Ct. 528, 97 L.Ed. 727] (1953), memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery * * *." 410 U.S. at 87, 93 S.Ct. at 836. In that case, Justice White stated that Exemption 5 of the Act was not to be applied "woodenly" as authorizing the "withholding of factual material otherwise available on discovery merely because it was placed in a memorandum with matters of law, policy or opinion." He pointed out that the proper application of the exemption makes discoverable *factual* material in memoranda, even though the memoranda include protected law, policy, or opinion or recommendations, if the "purely factual material appearing in those documents [is] in a form that is severable without compromising the private remainder of the documents."[13]

Ordinarily, when the issue of severability, as stated in *Mink*, arises, the Court will review *in camera* the documents in controversy.[14] But, as *Mink* declares, such *in camera* review "need not be automatic". If the agency is able to establish, whether "by surrounding circumstances" or otherwise, that the documents "are purely advisory and contain no separable, factual information" or if the agency discloses "the factual portions of the contested documents" and shows "that the excised portions constitute the bare bones of protected matter", *in camera* inspection may be avoided.[15]

In this case, it is freely conceded by the Administrator that the documents in question contain in part scientific, medical, economic and technological data of a purely factual nature. The District Court found from an *in camera* review of the documents that such factual data were "severable without compromising the private remainder of the documents." That this conclusion is correct was substantiated by the subsequent concession made by the Administrator himself. Thus, the District Court permitted the Administrator to, and the Administrator did, "select from the documents that the Court has [had] examined en camera [*sic*], those matters which they [he] would agree are purely factual or scientific, as distinguished from advice, recommendations, opinions and other material reflecting deliberative and policy making processes." After receiving this compilation by the Administrator, the District Court commented that there were few or no significant differences between the material in the documents found by him to be purely factual and not intertwined with the decisional processes of the Administrator, and those agreed by the Administrator to be so purely factual. The Administrator does not dispute this statement of the District Court. We assume, therefore, there is no substantial difference between the material found by the District Court to have been "purely factual" and severable from protected material and that so found by the Administrator's own representative. Under those circumstances, it is thus incontestable that in a substantial sense the material, the disclosure of which he resists, is not

---

13. *Mink, supra*, 410 U.S. at 91, 93 S.Ct. at 838.

S.Rep. No. 1219, 88th Cong., 2d Sess., 13–14:

"Exception No. 5 [of the Freedom of Information Act] would exempt 'intra-agency or interagency memoranda or letters dealing solely with matters of law or policy.' * * * Exception No. 5 has been included to cover this situation, and *it will be noted that there is no exemption* for matters of a factual nature." (Italics added.)

14. Sterling Drug, Inc. v. F.T.C., *supra*, at 703 (450 F.2d.).

15. *Mink, supra*, 410 U.S. at 93, 93 S.Ct. at 839.

within Exemption 5 both under the findings of the District Court's *in camera* inspection and under the admission made by the Administrator's representative at trial.[16]

As a last-line defense to disclosure, however, the Administrator invokes "executive privilege". Such privilege was well recognized long before the enactment of the Freedom of Information Act. The extent and scope of the privilege, which is regarded as in part constitutional in origin and in part common law, have been explicated in the numerous decisions in which the issue has arisen.[17] While the claim is one to be asserted initially by "the head of the department which has control over the matter" inquired into, resolution of the right to secrecy is not left to "the caprice of executive officers"; rather, it is for the courts to "determine whether the circumstances are appropriate for the claim of privilege." United States v. Reynolds (1953) 345 U.S. 1, at 8–10, 73 S.Ct. 528, at 532, 97 L.Ed. 727.

In determining when the claim may be properly invoked, the Courts have for long classified the information sought under two broad headings. This was the procedure followed by Justice White in *Mink*. The first classification relates to what has been often described as "state secrets" or matters relating to national security, either military or diplomatic.[18] The second classification consists of "official information", represented in this case by "intra-office advice on policy." [19] The right to disclosure differs markedly with the two classifications. Because they pose patent dangers to the public interest, "(D)isclosures that would impair national security or diplomatic relations are not required by the courts." [20] And while courts are "to determine whether the circumstances are appropriate for the claim of privilege" on this ground,[21] the judgment of the Executive that disclosure might impair "national security or diplomatic relations" is conclusive, unless the Court finds that the privilege is asserted arbitrarily or capriciously; and, in considering the issue or arbitrariness or capriciousness, the Court is not ordinarily entitled to examine *in camera* the contested documents.[22] The second classification, on the other hand, as it relates to this case, applies to "official information", and covers "materials reflecting deliberative or policy-making processes," as distinguished from purely factual material. The disclosure of such materials involves a far lesser danger to the public interest than the disclosure of "state secrets" and has always been sub-

16. Cf., Ackerly v. Ley, *supra*, at 1340 (420 F.2d):

"Again, however * * *, we confess to a considerable lack of enthusiasm for the caliber of the Commissioner's performance in this seemingly erratic discharge of his responsibilities under the Freedom of Information Act."

*See*, *also*, M. A. Schapiro & Co. v. Securities and Exchange Com'n. (D.C. D.C.1972) 339 F.Supp. 467, 469, where the Court remarked that the subsequent release of parts of the contested material "is an indication on their part as to the merits of their initial assertions."

17. Davis, The Information Act: A Preliminary Analysis, 34 U. of Chi.L.Rev. 761, 764 (1967).

18. United States v. Reynolds, *supra*, at 7 (345 U.S.), 73 S.Ct. 528; Totten, Administrator v. United States (1875) 92 U.S. 105, 107, 23 L.Ed. 605; Note, Ad-

ministrative Law—Freedom of Information Act, 25 Vand.L.Rev. 397, 400 (1972).

19. *See*, Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena (D.C.Cir. 1966) 40 F.R.D. 318, 324, n. 15.

20. Kaiser Aluminum & Chemical Corp. v. United States (1958) 141 Ct.Cl. 38, 157 F.Supp. 939 at 944–945. *See*, *also*, United States v. Marchetti (4th Cir. 1972) 466 F.2d 1309, 1317, cert. denied 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516.

21. United States v. Reynolds, *supra*, at 7 (345 U.S.), 73 S.Ct. at 532.

22. Epstein v. Resor (9th Cir. 1970) 421 F.2d 930, 7 A.L.R.Fed. 870, cert. denied, 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549.

*Mink*, *supra*, 410 U.S. at 93, 93 S.Ct. at 839.

ject to a much less stringent rule for discovery and a broader scope of judicial review. *In camera* examination by the Court of the contested documents in order to determine the acceptability of the claim is generally an accepted practice in this situation.

■ Congress was obviously aware of these two broad classifications of material, over which the claim of "executive privilege" might be asserted and, in the Freedom of Information Act, attempted to give to each classification its precise, established judicial right of immunity from discovery.[23] Thus, in Subsection (1) of the Exemptions, the Act invested with immunity from disclosure all matters "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy." As *Mink* makes clear, the test whereby disclosure of these "state secrets" is to be governed under the Act "was to be simply whether the President has [had] determined by Executive Order that particular documents are to be kept secret." [24] This was in keeping with established precedent. But, so far as government documents not qualifying as "state secrets" are concerned, the Act, as authoritatively construed in *Mink*, merely

codified the existing law by granting protection only to those portions of a government document that were a part of the "deliberative or policy-making processes" of government and not to those portions that constituted the "purely factual" material therein, "severable without compromising the private remainder of the documents."[25]

The claim of "executive privilege" in this case is no more than a restatement of the Administrator's claim for exemption under Section (b)(5) of the Act and no broader than the rights given the Administrator under that Section. As the Court recognized in Philadelphia Newspapers, Inc. v. Department of H. & U. D. (D.C.Pa.1972) 343 F.Supp. 1176, 1178, the right of immunity, as asserted by the Administrator in this case, is the same, whether it be claimed as an exemption under Section (b)(5) or under the heading of "executive privilege". Thus, the claim of "executive privilege" gives no added stature to the Administrator's claim of exemption under Exemption 5 and is equally unavailing as a basis for reversal of the District Court's conclusion.

Affirmed.

---

23. *See*, Pilar v. SS Hess Petrol (D.C.Md. 1972) 55 F.R.D. 159, 162:

"* * * by its terms and tenor, the statute [Freedom of Information Act] creates no new exemption for agency files; in the several exemptive provisions it merely recognizes and codifies the existing judicially and congressionally created exemptions."

24. *Mink*, *supra*, 410 U.S. at 82, 93 S.Ct. at 833.

Soucie v. David, *supra*, at 1079, n. 48 (448 F.2d) puts it:

"But to qualify for the first exemption, the Government need show only that the record is 'specifically required * * * to be kept secret' pursuant to an Executive order; review of the propriety of keeping it secret is then limited to determining that the admin-

istrative decision was not arbitrary and capricious."

*See, also*, Committee for Nuclear Responsibility, Inc. v. Seaborg (1971) 149 U.S.App.D.C. 393, 463 F.2d 796, 798.

25. *Mink*, *supra*, 410 U.S. at 91, 93 S.Ct. at 838.

*See*, Soucie v. David, *supra*, at 1077 (448 F.2d).

It is of interest, too, that the proposed Rules of Evidence for the United States Courts and Magistrates make this same distinction between "state secrets" and "official information" and establish the same rules governing the production of such materials as are set forth in the Freedom of Information Act (Rule 509). This similarity was noticed by the Court in *Mink*. 410 U.S. at 89, n. 16, 93 S.Ct. at 837.