**MOORE–McCORMACK LINES, INC., Appellant,**

v.

**I.T.O. CORPORATION OF BALTIMORE, Appellee,**

**Secretary of Labor, Amicus Curiae.**

No. 73–2165.

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1974.

Decided Dec. 27, 1974.

Randall C. Coleman and Thomas C. Lederman, Baltimore, Md. (John T. Ward, Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellant.

David R. Owen, Baltimore, Md. (Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

David M. Cohen, Atty., U. S. Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., Stephen F. Eilperin, Atty., Dept. of Justice, Michael H. Levin, Counsel for App. Litigation, and Louis Weiner, Regional Sol., U. S. Dept. of Labor, on brief), for amicus curiae.

Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

Moore-McCormack Lines, Inc., appeals from the dismissal of its third party claim against I.T.O. Corporation, a stevedoring company, in which it sought indemnity for damages paid Joseph L. Wodzenski, a longshoreman injured on one of Moore-McCormack's ships. Moore-McCormack assigns numerous errors which, with one exception, we find to be without merit. The single assignment of error warranting discussion is the district court's ruling that the Freedom of Information Act did not require disclosure of a critical paragraph in the Department of Labor's accident report and the court's consequent limitation of the examination of the Department's compliance officer. We conclude that the Department was not entitled to withhold the contested paragraph and that the Rules of Civil Procedure did not bar admission of the evidence. Accordingly, we vacate and remand the case for reconsideration in light of the entire record as supplemented by the excluded evidence.

I

While Moore-McCormack's vessel was being unloaded, the port vang purchase wire snapped and the lower vang pendant and block fell, striking the longshoreman. The stevedore contends that the vang broke because it was corroded and unable to withstand the stress of unloading. The shipowner claims that improper operation of the winch by one of the stevedore's employees caused the break. The shipowner settled the longshoreman's claim and then submitted its third party complaint for indemnity against the stevedore to the court without a jury.

In an effort to prove that the winch operator was at fault, Moore-McCormack

subpoenaed the Department of Labor's compliance officer and the accident report that he had prepared. The Department voluntarily released all of the report except a paragraph which it said contained the compliance officer's conclusion about the cause of the accident. The Department also released its official agency opinion stating that no violation of pertinent regulations caused or contributed to the accident.

The district court examined the report *in camera*[1] and admitted into evidence the following "Finding & Facts" which were in the portion of the report released by the Department:

"1. The crib load of quebracho (6.9 & 7.1 tons) was within [safe working load] of gear (see attached ref.).

2. The guy wire that broke was not visibly poor and showed no signs of kinks, broken strands nor dry rot.

3. The winch operator is one of the better ones on the waterfront and has had no accidents on his record.

4. The injured was not in an unsafe position in relation to the load.

5. The positioning of guys, booms and falls were in accordance with good rigging practice and have been used safely since the accident on all sister vessels.

6. The angle of the falls never exceeded 120 degrees as the positioning of booms and the load at time of accident preclude any greater angle from being introduced into the gear."

The court ruled, however, that the intra-agency exemption to the Freedom of Information Act, 5 U.S.C. § 552(b)(5), authorized the Department to withhold the report's next paragraph which the Department had deleted from the copies furnished counsel:

"Conclusions:

In [view][2] of the above, it is concluded that the wire parted under a sudden shock load that was put on it by hauling on burton wire fall at a time (1st draft off vessel) when the mid-ship guy was still too slack and this transfer of the load from dual falls to a single one caused the port boom to surge inboard until the guy took up abruptly and caused the wire to part."

Ruling consistently, the district judge limited the examination of the compliance officer to his findings and facts. The court also sustained objections to Moore-McCormack's questioning the compliance officer about the following comment, although the Department had previously released this part of the report: "The operation was and is done in a safe, reasonable manner; but a possible sudden load surge must be guarded against. Retrain winch operator."

At the conclusion of the shipowner's case, the district court granted the stevedore's motion to dismiss under Rule 41(b) of the Federal Rules of Civil Procedure. Relying in part on the Department's official opinion exonerating the stevedore and noting the absence of evidence that the winch operator had put any undue stress on the gear, the court ruled that the shipowner had failed to prove that the vang broke because the stevedore had breached its warranty of workmanlike service. Specifically, the district court found that the wire was defective at the time of the accident, rendering the vessel unseaworthy. It held that the injured longshoreman was not contributorily negligent and that the stevedore had properly rigged and operated the vessel's gear. The district court's ruling is amply supported by the record, and

---

1. *See generally* Note, In Camera Inspections Under the Freedom of Information Act, 41 U.Chi.L.Rev. 557, 575 (1974).

2. The report reads "in lieu of the above." We have assumed that the compliance officer meant "in view." However, if "in lieu" was intended, there can be no question about the similar import of the admitted and excluded paragraphs, and both should have been admitted. Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

had not the contested evidence been excluded, the judgment would be unimpeachable.[3]

## II

With exceptions not pertinent to this case, the Freedom of Information Act, 5 U.S.C. § 552(a), requires government agencies to make their records available to any person, unless the Act specifically exempts disclosure. The exemption on which the district court relied, § 552(b)(5), provides:

"(b) This section does not apply to matters that are—

> .    .    .    .    .

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

In Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the leading case construing exemption (5), the Supreme Court distilled a commonsense, flexible rule from the legislative history and judicial opinions dealing with the privilege of executive agencies to withhold information from their adversaries. The Court held that the exemption authorized an agency to withhold "materials reflecting deliberative or policy-making processes" but required disclosure of "purely factual, investigative matters." 410 U.S. at 89, 93 S.Ct. at 837.

In the excluded paragraph of the report, the compliance officer neither expressed an opinion nor made a recommendation to his superiors concerning I.T.O.'s violation of any regulation or statute.[4] Notwithstanding the paragraph's label of "Conclusions," it contains no more than inferences that are essentially similar to the findings which preceded it. Both parts of the report are investigative and depend on the observation and expertise of the compliance officer, but neither reflects the deliberative processes of decision or policy-making. Under the heading "Finding & Facts," the compliance officer listed factors which he believed did not cause the accident, while in the paragraph labeled "Conclusions," he described the sequence of events which he believed did cause the accident. Admission of the paragraph containing the officer's "Finding & Facts" and exclusion of the paragraph containing his "Conclusions" reflected only a part of his investigation and created an unintended false impression about it.

Both the facts revealed by an accident investigation and the inferences drawn from the facts may influence the agency's decisions, but this does not insulate either from disclosure. In Machin v. Zuckert, 114 U.S.App.D.C. 335, 316 F.2d 336, cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963), appeal after remand, 118 U.S.App.D.C. 410, 336 F.2d 914 (1964), at the instance of a party who was suing the manufacturer of a military aircraft, the Court of Appeals directed the district court to examine in camera the investigatory report of Air Force mechanics. It ordered disclosure not only of strictly factual findings but also, over the objection of the Secretary of the Air Force, of "opinions" or "conclusions" the mechanics expressed concerning possible defects in the propellers that might have been due to the negligence of the manufacturer. Machin provides sound precedent although it predates the Freedom of Information Act. The Act was designed to expand, not contract, the information formerly made available to the public.

---

3. The wire was examined several times after the accident. A metallurgist testified that a chloride test conducted forty-five days after the break revealed heavy salt contamination in the broken section of wire. In a laboratory experiment made over four months after the accident, a strand of wire broke under a load far less than its nominal strength.

4. However, in another part of the report which the Department voluntarily released, the compliance officer advised his superiors, "As of this writing, no violation of the regulations has been noted."

■ We do not, of course, suggest that all the material contained in an agency accident report need always be made available to the public, but it bears repeating that "the Act makes disclosure the rule and secrecy the exception." *See* Ethyl Corporation v. Environmental Protection Agency, 478 F.2d 47, 49 (4th Cir. 1973). Agencies must carefully observe the distinction *Mink* draws between exempt and nonexempt intra-agency records. Inferences about the cause of an accident drawn from facts revealed by the investigation, though labeled as opinions or conclusions, are not exempt under the guise of deliberative or policy-making material. All too frequently their suppression will distort the tenor of the document. *See generally* Note, The Freedom of Information Act and the Exemption for Intra-Agency Memoranda, 86 Harv.L.Rev. 1047 (1973).

### III

■ The Department also contends that 5 U.S.C. § 552(b)(7) prohibits disclosure of the investigator's conclusions. That exemption specifies:

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency."

The legislative history indicates that this exemption is meant to apply to all law enforcement proceedings, not just to violations of the criminal statutes. Wellman Industries, Inc. v. NLRB, 490 F.2d 427 (4th Cir. 1974); H.R.Rep. No. 1497, 89th Cong., 2d Sess., 2 U.S.Code Cong. and Ad.News, 2418, 2428 (1966). However, the bare assertion that the files are for law enforcement purposes is not sufficient to preclude disclosure when no enforcement proceedings are contemplated. Bristol-Myers v. FTC, 138 U.S.App. D.C. 22, 424 F.2d 935, 939 (1970). Instead, exemption must be tested by the Congressional purpose underlying § 552(b)(7) which has been aptly summarized as follows:

5. *See* Frankel v. SEC, 460 F.2d 813, 817 (2nd Cir. 1972); *accord*, Aspin v. Department of Defense, 160 U.S.App.D.C. 231, 491 F.2d 24, 29 (1973).

"(1) to prevent the premature disclosure of the results of an investigation so that the government can present its strongest case in court, and

"(2) to keep confidential the procedures by which the agency conducted its investigation and by which it has obtained information." [5]

■ Disclosure here will offend neither aspect of the legislative purpose. Because no enforcement proceeding is pending or contemplated, disclosure will not prejudice the government. Nor is there any question of endangering government sources or investigative techniques. The excluded paragraph of the report adds nothing on these subjects to the information the Department released. The compliance officer's observations of facts and the inferences he drew were the origin of both parts of the report. His investigative technique was clearly revealed in the portion of the report the Department furnished the parties. This included information about how the officer learned of the accident, the time and place of the investigation, the names and titles of the people from whom he obtained information, numerous photographs of the ship's rigging and the broken cable, the officer's comment that he had found no violations, and his recommendation that the winch operator should be retrained. The excluded paragraph disclosed nothing additional about the sources of the Department's information or its confidential procedures. We conclude, therefore, that no sound reason exists for applying the investigatory file exemption.

### IV

Finally, the Department suggests it can withhold the contested paragraph by virtue of traditional privilege under Rule 26(b) of the Federal Rules of Civil Procedure.[6] We find no merit in this contention. A government agency now has no

6. Rule 26(b)(1) provides in part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . ."

privilege to withhold information from the public if the Freedom of Information Act requires its disclosure. Consequently, the Department's claim for exclusion under Rule 26(b) must be viewed as a restatement of its claim for exemption under 5 U.S.C. § 552(b)(5) and (7). *Cf.* Ethyl Corporation v. Environmental Protection Agency, 478 F.2d 47, 52 (4th Cir. 1973).

■■■ The Act requires that all records, except those which by its terms need not be disclosed, should be made available to the public. The Act, however, does not forbid disclosure of any records, so government officials may make public that which it exempts. Disclosure of exempt data is governed by a variety of statutes, rules, and regulations. *See generally* Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 766 (1967). Since the Act does not exempt the contested paragraph, we have no occasion in this opinion to consider the effect of Rule 26(b) on the extent of discovery when a record which is exempt under the Act might be produced under some other statute or regulation. It is sufficient for us to hold that Rule 26(b) does not authorize an agency to withhold any records which the Act commands it to disclose.

The judgment is vacated and the case is remanded for further proceedings consistent with this opinion. Since the case was tried without a jury, there is no need for a full re-trial of the issues. The district court should reconsider its decision in light of the paragraph of the report that was previously excluded and, if needed, the further testimony of the compliance officer.[7] Based on this evidence, the court can make supplemental findings and conclusions. We, of course, express no opinion on the effect that this additional evidence should have on the outcome of the case. Each party shall bear its own costs.

FIELD, Circuit Judge (concurring and dissenting):

While I agree with the views expressed in parts III and IV of Judge Butzner's opinion, I think the district judge was correct in ruling that the portion of the compliance officer's report entitled "Conclusions" fell within the intra-agency exemption of the Freedom of Information Act.[1]

To some degree my disagreement with the majority stems from my reading of the report. The purpose of the investigation by the compliance officer was to determine whether Wodzenski's injury had resulted from the violation of any of the regulations which had been promulgated by the Department of Labor to protect the health and safety of longshoremen. The officer's report was prepared for the use of the Department and contained the six factual observations upon which it reached the conclusion that the operation had been carried out in a safe and reasonable manner. Upon request the Department disclosed all of the officer's factual findings and in addition thereto the shipowner received the full investigatory report. This latter report included the following:

"WHAT REMAINS TO BE DONE?— INVESTIGATOR'S COMMENT.

The operation was and is done in a safe, reasonable manner; but a possible sudden load surge must be guarded against. Retrain winch operator." (Emphasis added).

It would reasonably appear that the compliance officer, having failed to find any regulatory violation, was pointing out to his superiors a possible explanation for the accident with a recommen-

---

7. We find it unnecessary to discuss extensively the compliance officer's role as a witness. Both parties sought his testimony about his findings, and the court allowed limited examination and cross examination on this subject. As we have noted, the court relied in part on these findings in reaching its decision. Fundamental fairness dictates that if either party desires the officer to testify about the excluded paragraph, the court should receive his testimony.

1. 5 U.S.C. § 552(b)(5).

dation that winch operators be retrained to guard against such a contingency in the future.[2] To me this would not reflect the conclusion of the compliance officer that such a load surge did, in fact, cause the wire to part; rather, it was his individual opinion with respect to a possible hazard which he relayed to his superiors in the course of the administrative process.

I am also concerned that implicit in the majority decision is the suggestion that the Freedom of Information Act not only entitles one in the position of the shipowner to opinions appearing in the investigatory file, but requires the official investigator to appear as an expert witness in a private civil action. Such a requirement would effect an unwarranted and disruptive intrusion upon the official duties and responsibilities of these investigators and involve them in private controversies unrelated to official business.[3] Additionally, while it is not too significant in the present case which was tried to the court, it would be most unfair to the opposing party to have such an investigator, bearing the apparent imprimatur of the Department of Labor, testify before a jury with respect to his administrative opinions.

2.  The use of the phrase "in lieu of the above" by the compliance officer is consistent with this interpretation, and I find no reason to assume that the officer intended to say "in view of the above" as suggested by the majority.

3.  Pilar v. SS Hess Petrol, 55 F.R.D. 159 (D.C. Md.1972); *see* 29 C.F.R. 1906.5(a) and 1906.6.