SOCIETY FOR ANIMAL RIGHTS,
INC., et al., Appellants,

v.

James SCHLESINGER, Secretary of
Defense of the United States, et al.

No. 75–1105.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 12, 1975.

Decided Feb. 13, 1975.

As Amended Feb. 27, 1975.

Bruce J. Terris, Washington, D. C., for appellant.

Larry G. Gutterridge, Atty., Dept. of Justice, for appellee Schlesinger. Thomas L. Osborne, Hopkinsville, Ky., of the bar of the Supreme Court of Kentucky, pro hac vice by special leave of court and R. Stan Mortenson, Washington, D. C., for appellees, Christian County Department of Health et al.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

## ORDER

On consideration of appellants' motion for an injunction pending appeal, it is

Ordered by the Court that the injunction entered by this Court on February 10, 1975, is dissolved, and that appellants' motion is denied. A statement of our reasons for denying injunctive relief is attached.

## PER CURIAM:

Appellants filed suit on February 3, 1975, seeking to halt the planned destruction of blackbirds on two military bases and in three counties of Kentucky and Tennessee. The project was originally scheduled for the night of February 3, but was delayed by order of the District Court so that a hearing could be held to determine whether a preliminary injunction should issue.

The crux of the case before us is the program of the Department of Defense for the projects to be conducted on the military bases. An initial decision was made to eliminate the birds. The Council of Environmental Quality advised that in its opinion the program could only proceed after preparation of an environmental impact statement, in accordance with the National Environmental Policy Act. The statement was prepared on an expedited schedule, which was approved by the Council. Comments were solicited from interested and informed sources. After preparation of the final statement on January 27, 1975, an additional seven-day period was allowed for comments.

The district judge heard evidence and argument on February 7, and on Saturday, February 8, he denied the motion for a preliminary injunction. He granted temporary relief until noon Monday, February 10, to permit appellants to bring the matter to this court under 28 U.S.C. § 1292(a). Appellants timely sought an injunction pending appeal. On February 10, we issued injunctive relief to preserve the status quo pending argument on the motion. That argu-

ment was held on February 12, 1975. Today we dissolve the injunction, and thus permit the Defense Department to proceed with its project, although as will appear we express concerns which we presume will be heeded.

The appellants who brought the lawsuit include, in addition to the Society for Animal Rights, Inc., a New York corporation, individual residents of Kentucky and Tennessee who allege an interest in being able to observe and enjoy the presence of blackbirds.

Appellants attack the Army's planned elimination of up to ten million birds primarily on the grounds (a) that the environmental impact statement is inadequate, and (b) that the proposed action is arbitrary and an abuse of discretion.

Appellants have raised many questions, and we identify some of the contentions and assertions as points that give us concern. Appellants claim, *inter alia,* that the effect of the avian control agent, Tergitol, represents a potential threat to people living in the vicinity of the areas to be sprayed. The chemical, which is still in the experimental stage, may end up in the lakes and streams as rain washes it from the dead birds. The birds themselves may carry it into the cities if they leave the roost after being sprayed.

Another concern is the removal of the carcasses of the birds that are killed. The statement contemplates a removal program from the roost at one of the bases if the kill is too large for aerobic disposal. There appears to be no provision for such action at the other base. Appellants claim that the presence of millions of dead bodies provides insects with a fertile breeding ground and rodents with a convenient food source, which may culminate in a possible environmental impact that has not been adequately considered.

The Defense Department's contention is that the material ecological consequences of its proposed action have been adequately identified in its environmen-

tal impact statement, and that its proposed action, while it may present risks, cannot be condemned as arbitrary in view of the evidence linking the presence of the birds to impairment of the quality of the environment of those living near the present roosts, including damage to crops and incidence of histoplasmosis.

There are interventions in support of the Government's proposed action by the communities involved, and numerous organizations, including a county department of health and the local chapter of the Audubon Society. Such risks to the local community as there may be from the chemicals are apparently risks it is prepared to accept in its conception of the larger good.

None of the parties contend that the Defense Department's proposed control program on the two military bases poses a threat to any species of blackbird.

In denying a preliminary injunction, the district court held that there was not a strong enough showing by appellants of probability of success on the merits, on the claims that the impact statement failed to adduce the material ecological consequences, or that the action proposed by the Defense Department, and its balancing of conflicting dangers and risks, was arbitrary.

█ █ The district court did not purport to make a ruling on the merits. This court, also, is not now engaged in a ruling on the merits. Indeed, even if we were now determining the appeal from the denial of the preliminary injunction, we could not reverse unless we were able to identify an error of law, or to conclude on some other basis that the district judge abused his discretion. Cox v. Democratic Central Committee of the District of Columbia, 91 U.S.App.D.C. 416, 200 F.2d 356 (1952). This would present a narrow question, and a great burden on appellants. The question is still more narrow, and the burden is still greater for litigants, like appellants, seeking an injunction pending the disposition of the appeal from the denial of the temporary injunction. See Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

█ At this juncture of the litigation, taking into account the scanty record before us and the narrowness of our review function, we cannot conclude that there was such a likelihood that the ruling by the district judge represented an abuse of judicial discretion that this court should intervene with an injunction pending further proceedings. See Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 393, 395, 463 F.2d 796, 798 (1971) (Amchitka Island Case).

Factors indicate that "issuance of a stay would have a serious adverse effect on other interested persons." *Virginia Petroleum Jobbers Ass'n, supra,* at 110, 259 F.2d at 925. The threats posed by the birds to human health and to the seed stores and feedlots of farmers seem significant. As we noted above, the Government's action is supported by the county health department and the local chapter of the Audubon Society. And unless the Government is allowed to act soon, it will lose the opportunity to act at all, due to the migratory habits of the birds and changes in weather conditions required for the planned control measures. We recognized in *Committee for Nuclear Responsibility, supra,* that circumstances of particular urgency might lead a court to withhold injunctive relief despite serious questions about the adequacy of the environmental impact statement.

While we cannot condemn appellees out of hand as proposing action that is illegal, we feel warranted in suggesting that the public interest may well warrant their seeking the advice of impartial scientists before proceeding with the spraying. We have already identified matters that give us particular concern, notably the possibility of danger from the chemical spray, and the ecological consequences of permitting carcasses to rot without removal.

█ Although the Defense Department may go ahead with its plans, it has

a continuing responsibility to gather information both from independent experts and through its own experiments. Prior to any subsequent applications of PA–14, it must incorporate new findings of significance into its analysis, perhaps by way of amending the existing EIS, with opportunity for comment by other agencies and members of the public. And, consistent with NEPA, it must reassess its determination to go forward in light of any changes in environmental impact analysis occasioned by its discoveries. See Calvert Cliffs' Coordinating Comm. v. AEC, 146 U.S.App.D.C. 33, 43, 449 F.2d 1109, 1119 (1971).

We assume that the case will proceed forward expeditiously in the district court despite the pendency of the § 1292(a) appeal in this court. Appellants advise that they will seek to amend their complaint to broaden their challenge to the role of the Department of the Interior.* Hopefully, the trial of this cause will provide information that will be helpful in the event governmental officers and agencies are involved in any similar control project in the future.

In considering this motion, we have given due consideration to a number of factual, scientific and legal contentions on each side that have not been spelled out in this opinion. Our result is governed by our approach, that the court does not have the function of determining what should be done, or the latitude to substitute its appraisals and conclusions for those of the executive branch. The function of the court, even on the merits, is to consider whether there is a showing that proposed executive action is contrary to law or an abuse of discretion. And for purposes of considering whether there should be relief pending determination on the merits, the judicial function is even more narrow. In the circumstances, the injunctive relief here-tofore granted appellants, in order that we might hear and consider oral argument, is dissolved.

So ordered.

---

* Appellants propose to attack the sufficiency of the justification for the use of an experimental chemical in this manner, and the failure of the Department of the Interior to prepare an impact statement before undertaking a wide program of giving, to local government authorities, the approval of the Department of Interior that appellants claim is necessary for lawful use of the chemical under the EPA's.