**E.D.S. FEDERAL CORPORATION**
vs.
**William T. HOGAN, et als**

**No. 55328**

Superior Court/Suffolk, ss.
Commonwealth of Massachusetts

**November 15, 1982**

**Phil David Fine, Robert F. Sylvia, Meredith Peterson Tufts,** counsels for plaintiff.
**Jeffrey R. Martin, Joseph L. Kociubes, Alexandra Leahe,** counsels for defendant.

## MEMORANDUM OF DECISION RE: GOVERNMENT INFORMATION PRIVILEGE

The extent to which the law of evidence recognizes a privilege against the discovery of information in the possession of the government is an unsettled question. 4 Moore's Federal Practice, par. 26.61(3)(1974).

An absolute privilege in the case of military and diplomatic secrets of state has long been recognized. See, **e.g. United States v. Reynolds,** 345 U.S. 1 (1953 **Reynolds**; McCormick, Evidence, sec. 104 at 230 (2d ed. 1972); Advisory Committee's Note to Proposed Federal Rule of Evidence 509.

There is less general agreement, however, with respect to a broader executive or government information privilege, protecting official documents and information when release would be injurious to the public interest.[1] The policy objective underlying the government information privilege is the promotion of candor in the decision-making process within the government. **Smith v. Federal Trade Comm'n,** 403 F. Supp. 1000, 1015 (D. Del. 1975 **Smith**). See also **Kaiser Aluminum & Chemical Corp. v. United States,** 141 Ct. Cl. 38, 157 F. Supp. 939 (1958). This policy, however, must be balanced against a litigant's need for disclosure of the information privilege. Therefore Federal law furnishes us with the necessary guidelines on executive privilege. See **Ghana Supply Comm'n v. New England Power Co.,** 83 F.R.D. 586, 594 (D. Mass. 1979 Massachusetts courts would turn to Federal case law for guidelines on executive privilege).

The procedural requirements for the proper assertion of the government information privilege were fashioned in order "to deter governmental units from too freely claiming a privilege that is not to be lightly invoked." **Smith, supra,** at 1016 n. 48, citing **Reynolds, supra.** The burden is on the claimant to prove entitlement to the privilege. **Smith, supra,** at 7. See also **United States v. Nixon, supra,** at 713. The court will not entertain a claim of government information privilege which has not been properly raised. **Smith, supra,** at 1017, citing **Black v. Sheraton Corp.,** 371 F. Supp. 97, 101 (D.D.C. 1974).

The specific requirements for proper assertion of the privilege, first set forth in **United States v. Reynolds,** 345 U.S. 1 (1953) and refined through later decisions of the Federal courts, are as follows:

(1) The **head** of the applicable agency must make a **formal claim** of government information privilege after **personal consideration** of the information at issue;

(2) There must be a **specific designation and description** of documents claimed to be privileged;

(3) And there must be **precise and certain reasons** for preserving the confidentiality of the information at issue.

---

[1]McCormick suggests that "[t]he difficulty of obtaining government information is a matter of common knowledge, and the creation of an added obstacle in the form of a privilege so broad in terms and uncertain of application can scarcely be defended." **McCormick, supra,** at 231. See Proposed Fed. R. Evid. 509, which would retain the privilege in tact. But see Proposed Mass. R. Evid. 508(b), which would abolish this portion of the privilege entirely.

Id. at 7. See **United States v. O'Neill,** 619 F. 2d 222, 227 (3d Cir. 1980); **Smith, supra,** at 1016. See also P. J. Liacos, Massachusetts Evidence, 196-197 (5th ed. 1981).

The facts necessary to support these three requirements should be set forth by affidavit. **Reynolds, supra,** at 7; **O'Neill, supra,** at 225; **Smith, supra,** at 1016. .

But the final decision on the validity of a claim of government information privilege must be made by the trial court. "The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect . . . Judicial control over the evidence in a case cannot be abdicated.to the caprice of executive officers . . ." **Reynolds, supra,** at 8. See also **United v. Nixon, supra,** at 707. **McCormick, supra,** sec. 109 at 234.

Generally, an **in camera** inspection of documents claimed to be privileged is appropriate, with the exception of cases in which military secrets are involved. 4 Moore's Federal Practice par. 26.61 (1974); **Reynolds, supra,** at 10-11. It is not clear whether an **in camera** inspection is required whenever a **colorable** claim of executive privilege **is raised.** See **Kerr v. United States Dist. Court for the Northern Dist. of Calif.,** 426 U.S. 394 (1976) (**in camera** inspection was desirable but not required). Although, it would seem proper for the court to reduce its administrative burden in cases involving numerous documents by requiring extensively detailed reasons for the claim of privilege on each document, so as to enable the court to make a decision with respect to the validity of each privilege claimed on the basis of the reasons given rather than on the basis of an actual inspection of the document. But here, the court did make an actual inspection of the approximately 1000 evaluation statistical summary sheets submitted. See **Kaiser Aluminum & Chemical Corp. v. United States, supra,** at 945-46 (holding that court properly upheld claim of privilege without **in camera** inspection). For an analogous case, see **Bougas v. Chief of Police of Lexington,** 371 Mass. 59, 64 (1976) (holding that although **in camera** inspection of documents claimed to be exempted from public records definition will sometimes be necessary and appropriate, it need not be automatic, given Superior Court workload).

The government information privilege is not absolute. **United States v. Nixon, supra,** at 706. The privilege is subject at least two significant qualifications:

(1) The privilege does not attach to **purely factual** communications within or between agencies, the disclosure of which would not compromise military or state secrets, or to factual materials contained in deliberative memoranda, if **susceptible to severance** from its context;

(2) The privilege may be overridden if after balancing the litigant's need for the information against the harm resulting from disclosure of the information, the court determines the information **ought to be disclosed.**

**Smith, supra,** at 1015, and cases cited. See also, 4 Moore's Federal Practice par. 26.61 (7)(1974).

The second qualification above, however, should probably be read fairly narrowly. See **New England Medical Center, Inc. v. Rate Setting Comm'n,** Mass. Adv. Sh. (1981) 1578, 1599 (court may allow inquiry into mental processes of administrative decision makers "in extraordinary circumstances where there is a strong showing of improper behavior or bad faith on the part of the administrator.") On the other hand, courts have been reluctant to uphold claims of executive privilege in cases involving charges of government misconduct when to do so would effectively preclude plaintiff from proving his case. See 4 Moore's Federal Practice par.26.61, at 26-327 n. 10, citing **Jabara v. Kelley,** 62 F.R.D. 424 (E.D. Mich. 1947).

There is some authority for the

proposition that a court should more closely scrutinize a claim of executive privilege in an action for review of agency action, to avoid permitting the agency to effectively insulate itself from judicial review. See **Montrose Chemical Corp. of California v. Train,** 491 F. 2d 63, 70 (10th Cir. 1974); **Bank of Dearborn v. Saxon,** 244 F. Supp. 394, aff'd 377 F. 2d 496 (6th Cir. 1967). See also 4 Moore's Federal Practice par. 26.51 (7)(5th ed. 1974) and cases cited. But see **United States v. Morgan,** 313 U.S. 409 (1941) (deposition of Secretary inquiring into bases for decision was improper); **Miller v. Smith,** 292 F. Supp. 55 (S.D.N.Y. 1968) (request for production of internal agency memoranda denied in action for review of CAB's denial of a license).

In discussing how a court should weigh a claim of executive privilege, the court in **Reynolds, supra,** stated that

> . . . (i)n each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but where necessity is dubious, a formal claim of privilege . . . will have to prevail.

**Id.** at 10-11.

Thus, in order to decide whether a valid claim of executive privilege exists, the court must consider the policies for and against release of the information together with the peculiar circumstances of the case before it, and exercise its best judgment.

Privilege, of course, is a doctrine of concealment. It means that materials relevant to the issue in court are, for some reason paramount to the administration of justice, to be hidden from disclosure. It is not to be construed beyond its necessary application. As stated in **Bank of Dearborn v. Saxon,** 244 F. Supp. 394 (401-403), "the mental process rule is but one facet of the general presumption of regularity which attaches to decisions of administrative bodies and that when a prima facie case of misconduct is shown, justice requires that the mental process rule be held inadmissible''.

Here, the plaintiff, E.D.S. claims that the defendants violated the procurement policies, provisions and/or procedures set forth in 801 CMR 5.00 and otherwise disregarded established regulations including an inbalance in the evaluation criteria as well as having committed an unethical impropriety which possibly could be a violation of law in making its award. Under such circumstances, the real public interest is not the agency's interest in its administration, but the plaintiff's interest in due process in obtaining further facts in support of its claim so as to properly prepare counter affidavits in opposition to the defendants' pending motions for summary judgment as provided for in Mass. Rules Civ. P. 56(f).

The policies and definitions which exist under the Massachusetts Public Records Act, G.L. c. 66, par. 10, may assist the court in weighing a claim of government information privilege. Information which is public under the Freedom of Information Act cannot be subject to executive privilege under Fed. R. Civ. P. 26(b)(1) **Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore,** 508 F.2d 945 (4th Cir. 1974). However, it does not necessarily follow that information included within a statutory exception to a definition of public record is automatically privileged or otherwise beyond the permissible scope of discovery.

The public Records Act, G.L. c. 66, sec. 10, and the definition of public records under G.L. c. 4, sec. 7, are the result of legislative determinations of the public interest in public availability of various documents. It may be appropriate for the court to consider this public interest in any necessary balance of the need for disclosure against the harm resulting from disclosure, particularly in cases in which the type of material sought

to be privileged is specifically addressed by the statute.

Further, the general policy of exposing government to public scrutiny whenever a strong specific countervailing interest does not dictate otherwise should perhaps inform the court in its evaluation of a claim of executive privilege. "On occasion, the public instrumentality may require confidentiality in its correspondence or operations, but generally its documents should be available to the public on a showing of need in equity court." **Wolfe v. Massachusetts Port Auth.**, 366 Mass. 417, 421 (1974).

A common sense reading of G.L. c. 4, par. 7(h) indicates the legislature's intent to make all inter and intra agency memoranda made in connection with the evaluation process for reviewing bid proposals public documents following a decision to enter into negotiations with or to award a contract subsequent to public bidding procedure, even though, as here no contract has actually been awarded. The apparent purpose of the preservation of confidentiality up until the time the contract is awarded is to allow the decision makers to engage in frank and candid discussion in an environment free from pressures brought to bear by specially interested parties.

It is the court's opinion that overall, even with or without a specific formal designation and description of those documents claimed to be privileged accompanied by precise reasons for preserving their confidentiality, the evaluation criteria sheets do not involve a probe into the mental processes of the evaluators. Rather, the four general categories of documents endeavor to translate the simple factual specifics of each bidder's qualification experience and bid proposals into a numerical scale so that evaluation and comparison might be made with greater facility. Therefore, these documents are not subject to a claim of executive privilege. As to the summary sheets, these appear to be factual in nature being more or less statistical summary sheets keyed to the evaluation sheets. The scores result from answers to questions which have "YES/NO" answers or objectively ascertainable numerical answers and are not predecisional advisory opinions or recommendations which comprise part of a process by which governmental decisions and policies are formulated. **NLRB v. Sears, Roebuck & Co.,** 95 S. Ct. 1504 (1975). The court has also determined from a careful reading of all the documentation, including affidavits and portions of deposition transcripts attached thereto, that on February 25, 1982, the MMIS Selection Board had concluded its review and evaluation of all proposals for a contract of a mechanized Medicaid claims processing and information retrieval system, better known as a Medicaid Management Information System (MMIS) and therefore all memoranda and documentation dated subsequent to said date is not subject to the governmental claim of executive privilege and is otherwise discoverable under Mass. R. Civ. P. 26(b), and since on that date the MMIS Selection Board had made its decision to notify the Commissioner of Administration and Finance to enter into negotiations to formalize a contract, all inter and intra-agency memoranda made in connection with the evaluation process for reviewing the bid proposals subsequent to February 25, 1982 are public documents and likewise discoverable.

Therefore, the court directs the following entries to be made:

1. Plaintiff's Motions to Compel Discovery and to Produce Documents is Allowed. The defendants are ordered to produce the documents requested in plaintiff's Second Request for Production except as to 1, 3 and 6 on or before November 29, 1982.

2. Plaintiff's Motion to Reconsider its Allowance of Defendants' Motion for Enlargement of Time. No action taken in view of the Response filed on November 11, 1982.

3. Plaintiff's Motion to Shorten Time all Defendants Have to Answer Interrogatories is Allowed. Defendants granted up to and including November 29, 1982 to Answer.

4. Plaintiff's Motion to Amend its Complaint is Allowed.

5. Defendant SDC's Motion to Compel Plaintiff's Production of Documents is taken under advisement.

The next hearing in this matter will be held on December 13, 1982 at 10:00 a.m. at which time the court will hear the Defendants' Motion for Summary Judgment.

**Herbert Abrams**
**Justice of the Superior Court**

