HUMAN RESOURCES MANAGEMENT, INC., et al., Plaintiffs,

v.

A. Vernon WEAVER et al., Defendants.

Civ. A. No. 77–1850.

United States District Court, District of Columbia.

Nov. 18, 1977.

Supplemental Opinion Jan. 11, 1978.

Frederick L. Miller, Jr., and Philip L. Chabot, Jr., Duncan, Brown, Weinberg & Palmer, Washington, D.C., for plaintiffs.

Robert N. Ford and Dennis A. Dutterer, Asst. U.S. Attys., Washington, D.C., Eric S. Benderson, Chief Counsel for Sp. Litigation, Small Business Administration, Washington, D.C., for defendants.

## OPINION

SIRICA, District Judge.

This is an action for declaratory and injunctive relief in connection with plaintiffs' termination from the Small Business Administration's (SBA) Section 8(a) Program.

The action is presently before the Court on plaintiff's motion for a temporary restraining order or, in the alternative, for a preliminary injunction. The Court has had an opportunity to consider briefs from both sides, including plaintiffs' reply to the government's opposition, and to hear oral argument. In these circumstances, there would be no purpose served by considering the motion for a temporary restraining order prior to or separate from the motion for a preliminary injunction. For the reasons that follow, the Court has determined that the plaintiffs' application for a preliminary injunction must be denied.

## Background

The Section 8(a) Program is operated by the Small Business Administration pursuant to 15 U.S.C. § 637(a) (1970) (codifying § 8(a) of the Small Business Act). The statute authorizes the Administrator of the SBA to enter into contracts for all types of supplies and services with federal departments and agencies and to arrange for the performance of those contracts by entering into subcontracts with small business concerns. The statute gives the SBA broad discretion to determine which firms shall receive the subcontracts and, in general, to develop a program which will be responsive to the goals and policies of the Small Business Act.[1]

In response to its statutory mandate, as well as to several subsequent congressional and presidential directives,[2] the SBA developed a program by which it seeks "to assist small business concerns owned and controlled by socially or economically disadvantaged persons to achieve a competitive position in the market place." 13 C.F.R. § 124.8–1(b) (1977). The SBA's section 8(a) regulations provide for eligibility in the program as follows:

(1) *Social or economic disadvantage.* An applicant concern must be owned and controlled by one or more persons who

---

1. *See Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696, 702–05 (5th Cir. 1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974).

2. *See id.* at 705–07.

have been deprived of the opportunity to develop and maintain a competitive position in the economy because of social or economic disadvantage. Such disadvantage may arise from cultural, social, chronic economic circumstances or background, or other similar cause. Such persons include, but are not limited to, black Americans, American Indians, Spanish-Americans, oriental Americans, Eskimos, and Aleuts. Vietnam-era service in the Armed Forces may be a contributing factor in establishing social or economic disadvantage. 13 C.F.R. § 124.8–1(c)(1) (1977).[3]

This action was brought by Gary D. Thomas and Human Resources Management, Inc., a close corporation of which Thomas is president and principal stockholder. In January 1975, Thomas applied for assistance under the Section 8(a) Program. Thomas based his eligibility on " 'chronic economic problems' . . . resulting from the poverty of his parents and support obligations all of which 'was further aggravated by . . . service in the U.S. Army during the Vietnam Conflict.' " Complaint at 4. The application was approved and Human Resources Management was granted section 8(a) status in April of 1975. Since its acceptance into the program, the firm has obtained six government contracts[4] totalling almost one-half million dollars in revenue and representing 70 percent of its business. Human Resources Management has asserted that it has consistently been in compliance with all applicable rules and regulations. The government has not challenged this asser-tion or suggested that the company has not met the ongoing objectives and goals set forth in its section 8(a) business plan.

Sometime during September, 1977, Mr. Thomas was informed by a district SBA official that the SBA was in the process of reviewing the certification and basic eligibility of all section 8(a) firms and that no contracts would be processed by the SBA until a review of a firm's eligibility was completed. It is undisputed that this "re-certification" program resulted from congressional concern over alleged abuses in the 8(a) program, for example, participation in the program by non-disadvantaged minorities and the use of minority group members as a "front" for ineligible partici-pants.[5] In a statement before a Senate subcommittee, A. Vernon Weaver, Administrator of the SBA, stated that changes would be made to rectify past abuses in the program. He told the subcommittee, in July 1977, that one of his actions would be "an evaluation of each firm in the 8(a) portfolio to determine (1) whether the firm's owners qualify under the established eligibility criteria . . . ."[6]

Soon after the July hearings a "recertification" program for 8(a) firms was institut-ed. As summarized in the government's opposition to the instant motion: "On August 12, 1977, pursuant to this pledge to Congress, the Administrator sent a memo-randum to all Regional Directors, instruct-ing that each Regional Office review and approve all final action taken by each District Office within their jurisdiction with respect to the 8(a) Program. Such final action included the award of new con-tracts." Defendants' Opposition at 3.

---

**3.** The section 8(a) regulatory scheme has been upheld by the Fifth Circuit as against a statutory and constitutional challenge in an authoritative opinion by Judge Wisdom. *Id.*; *accord, Valley Forge Flag Co. v. Kleppe,* 165 U.S.App. D.C. 182, 506 F.2d 243 (1974) (adopting the *Ray Baillie* opinion).

**4.** Thomas's company is primarily a consulting firm, providing research assistance and studies of policy and program issues to a variety of governmental clients and private firms. Due to the nature of the service which Thomas offers, the section 8(a) contracts which his firm has received have been generated through his own marketing efforts rather than being "offered" to the firm by the SBA. The primary benefit of the program to plaintiffs, therefore, is appar-ently the contract-subcontract arrangement with the SBA and the removal of the govern-ment contracts which he generates from nor-mal competitive bidding procedures.

**5.** Statement of A. Vernon Weaver, SBA Admin-istrator, Before the Senate Comm. on Govern-mental Affairs, Subcomm. on Federal Spending Practices and Open Government (July 8, 1977).

**6.** *Id.*

The recertification review of Mr. Thomas's firm during September apparently was instigated because the firm had an 8(a) contract pending before the SBA. At the agency's request, Mr. Thomas submitted information to the district office as part of the review. Finally, in a letter to Thomas dated October 14, 1977, and in a similar letter to his attorney dated October 21, 1977, Thomas was informed by the district director that the SBA was "currently considering termination action for your firm from the 8(a) Program." The October 14 letter continued:

It has been determined that you are not socially and/or economically disadvantaged. The basis for the above determination is as follows: There is no clear evidence that you have deprived [sic] of the opportunity to develop and maintain a competitive position in the economy because of social or economic disadvantage. Any disadvantage you may have had in your early childhood has apparently been overcome. Your veterans status was considered, however, it was noted that you did not enter business until 9 years after leaving service. The time spent in the service did not deprive you of the opportunity to start a business nor was it a deterrent to achieving necessary business expertise.

The director added the observation that the sort of problems Thomas encountered in starting his business were typical of "all new business start-ups." Plaintiffs were invited to "informally discuss this proposed action with us within the next 15 days." The October 21 letter added: "Mr. Thomas should present any data which he would wish to be considered within the fifteen day period or he will be terminated from the 8(a) program based on the initial determination that the facts previously submitted do not substantiate economic or social disadvantage."

At the time this recertification review was instituted, Human Resources Management had one contract pending before the SBA. That contract, with the Agency for International Development, was eventually processed by the agency despite the recertification review. It is undisputed, however, that the SBA will not process any additional contracts until its review process is complete. Although Human Resources Management continues to hold section 8(a) status, it has therefore been suspended from receiving any program benefits. Plaintiff asserts that there are two "proposed contracts" with the Department of Energy which are in danger of being lost unless they are soon handled through the 8(a) program. Second Thomas Affidavit at 3. In addition plaintiffs have alluded to future discussions with other agencies which may lead to proposed 8(a) contracts.

Plaintiffs filed the instant action for declaratory and injunctive relief on October 27, 1977. The cause of action, as stated in the complaint, is three-fold. Count I charges that the failure of the SBA to provide notice and opportunity to comment prior to termination of program benefits was a violation of due process guarantees and was arbitrary, capricious, and otherwise unlawful. Count II charges that defendants' failure to formally promulgate or to publish the procedures under which they are conducting their recertification program violates the publication requirement of the Administrative Procedure Act, violates due process, and is arbitrary, capricious, and otherwise unlawful. Finally, Count III alleges that the recertification program is being administered so as to give discriminatory preference to minority groups to the exclusion of non-minority disadvantaged persons. This practice is claimed to be a violation of Thomas's civil rights under various statutory and constitutional provisions. The instant motions for temporary injunctive relief were filed contemporaneously with the complaint.

Following institution of this action, and shortly after oral argument on the instant motion had been scheduled, the acting district director of the SBA sent a second letter to Mr. Thomas. The letter was dated November 8, although a letter dated November 9 corrected a typographical error in the previous letter. The November 8 letter formally rescinded the October 14 and 27

letters "so that certain questions might be clarified." , The letter goes on to state that, as a result of a recertification review, "it appears that" Human Resources Management "cannot be recertified based on the determination that you, the principal, are not socially or economically disadvantaged, which is a requirement for enrollment in the 8(a) program." The letter goes on to repeat, almost verbatim, the reasons for the "determination" set out in the earlier letters. It concludes:

> Therefore, in accordance with SBA SOP 60 41 2, Paragraph 66, you are invited to discuss informally with me within 15 working days of receipt of this letter the recertification of your firm's eligibility. In addition, you may within 30 calendar days of receipt of this letter submit to me any written information or statement you wish to have considered in this matter. In the event of adverse decision, you have the right of appeal as outlined in SBA SOP 60 41 2, Paragraph 67.

### Preliminary Injunctive Relief

It is clear that Mr. Thomas originally brought this action in the face of actual or imminent termination from a program which he regards as the lifeblood of his business. More important, the SBA was attempting to bring about the termination under conditions which, for good reason, appeared to the plaintiffs as arbitrary, summary, and in accordance with procedures known only to defendants. There are no published regulations or other procedures for terminating 8(a) program participants for reasons relating to basic ineligibility. Existing regulations and unpublished procedures contemplate program termination on only two grounds: program completion (completion of the business plan) or failure to meet goals and objectives. 13 C.F.R. § 124.8–2(e) (1977); SBA, Office of Business Development, Section 8(a) Program Standard Operating Procedures at 27, para. 11 (Feb. 2, 1976).

The Court views the initial actions of the agency in this matter as examples of ineptness and unfairness. Thomas, who had once been certified as economically disadvantaged, was not and has not been informed how the agency's standards for evaluating disadvantage have changed. He has not been told and has no way of determining precisely what criteria are being applied to implement the regulation. The letters written him by the district director were ambiguous. Plaintiffs were not told whether they would have a right to a hearing following the "informal discussions" or whether there would be an opportunity to appeal. Additionally, plaintiffs allege that numerous inquiries to the SBA yielded no further enlightenment. In short, plaintiffs had no way of knowing, prior to the November 8 letter and the proceedings in this lawsuit, what procedural avenues were open or what substantive response would be appropriate.

The Court cannot condone the agency's initial actions. But because those actions were apparently taken more in haste than in bad faith, the Court will consider the record as it presently stands in light of the November 8 letter. That letter makes clear that plaintiff will be afforded those standard agency procedures which, heretofore, have been applied only in actions for termination unrelated to basic eligibility.

Plaintiffs have challenged the SBA's termination actions on three grounds: lack of published procedures, failure to provide pretermination notice or hearing, and discriminatory application of the eligibility requirements against disadvantaged, non-minority persons.

██ The applicable standards which must guide a court in determining questions of preliminary injunctive relief are well recognized. They are generally stated to be: 1) Has the applicant made a strong showing that it is likely to prevail on the merits of the underlying action? 2) Has the applicant shown that without such relief, it will be irreparably injured? 3) Would the issuance of an injunction substantially harm other parties interested in the proceedings? and 4) Where lies the public interest? *See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841

(D.C.Cir.1977). Although the first requirement has often been stated as mandating a finding of "probability" of success on the merits[7], the *Holiday Tours* case has refined the analysis: "[W]e hold that under *Virginia Petroleum Jobbers* a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant a stay if the movant has made a substantial case on the merits." 559 F.2d at 843. At a minimum then, applicants for interim relief must present a substantial case on the merits.

■ For the reasons that follow, the Court finds that plaintiffs have not made a substantial case on the merits and that the remaining factors do not strongly favor interim relief. In addition, it appears to the Court that there are compelling reasons why the plaintiffs should first be required to exhaust their administrative remedies before seeking judicial intervention in this matter.

#### a. The Publication Requirement Claim

Count II of the complaint charges, in essence, that defendants' actions are unlawful because they were taken pursuant to procedures which have not been published as required by section 3 of the Administrative Procedure Act (APA), 5 U.S.C. § 552(a)(1) (1970). Section 3 concludes with the directive that persons may not be "required to resort to, or be adversely affected by" a matter which is not published as required "[e]xcept to the extent that a person has actual and timely notice of the terms thereof." Unlike section 4 of the APA (5 U.S.C. § 553), which is applicable only to proceedings for the promulgation of substantive rules with the force of law, section 3 applies to a broad range of agency policies, rules, and procedures. Section 4 requires formal rulemaking proceedings; section 3 only requires actual and timely notice of agency "matters", notice which is normally to be achieved through publication in the Federal Register. But where a person has "*actual* and timely notice", the terms of this section permit him to be "required to resort to" a matter covered by the section.

■ The mandate of the statute is clear as it pertains to agency procedures—agencies may not require a person to resort to procedures which are unpublished, except to the extent of actual and timely notice. In the case at bar, the November 8 letter informed plaintiffs of the exact procedures which were to be applied in their case and started the running of the applicable time limitations as of the date of receipt of the letter. It therefore appears to the Court that, as applied to plaintiff, the SBA's failure to publish these procedures in the Federal Register was not unlawful. Furthermore, the basic standard for eligibility in the program has already been promulgated and codified in 13 C.F.R. § 124.8–1(c)(1) (1977).

#### b. The Discrimination Claim

The allegation of discrimination against disadvantaged, non-minority individuals is stated in Count III. The Court finds that plaintiffs have presented something less than a substantial case on the merits of this claim as well. It is conceded that the prime reason for the recertification program is that past abuses were committed by, or on behalf of, non-minority applicants. The Court can also assume that the general goal of the SBA Administrator is to increase the participation of qualified minority group members in the 8(a) program. Several executive orders and at least one congressional directive require no less. *See Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696, 705–06 (5 Cir. 1973).

Nevertheless, the bald assertion, in paragraph 33 of the complaint, that the review has been "executed without regard to and in violation of the eligibility criteria set forth in 13 C.F.R. § 124.8–1" simply does not constitute a substantial case on the

---

7. *See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.* at 843. *See generally Virginia Petroleum Jobbers Assoc. v. FPC,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

merits in light of other undisputed facts. Even the October letters to plaintiffs clearly indicate that the termination review was being undertaken on standards relating to the economic and social disadvantage test of the regulation. Although it is true that the agency has yet to articulate the precise criteria on which the question of disadvantage is being reviewed, as will be developed more fully below, the Court will require a meaningful articulation of standards during the administrative process. At this juncture, however, plaintiffs' allegations amount solely to a conclusory allegation impugning the good faith of the SBA Administrator. As such, their showing does not approach the substantial case standard required by *Holiday Tours*. As noted earlier, the defendants' initial actions appear to have been conceived hastily and without due regard for fairness to plaintiffs. The ad hoc nature of those actions does not, however, necessarily indicate either bad faith or discriminatory intent.

c. The Prior Hearing Requirement Claim

Plaintiffs' final allegation relates to the lack of notice and opportunity to comment prior to the date of effective termination from the program, *i. e.,* the date when the agency ceased to process plaintiffs' 8(a) contracts. This failure to provide a prior hearing of any sort is challenged primarily on the basis that it deprived plaintiffs of property without due process of law. The first question, of course, is whether plaintiffs' acceptance into and participation in the 8(a) program gave rise to a property interest cognizable under the due process clause of the 5th Amendment.

Although for the purposes of the motion the Court will assume that plaintiffs' initial certification did create a statutory "entitlement" and hence a property interest, it must be emphasized that plaintiffs have conceded defendants' inherent authority to reexamine the eligibility of participants in the program. *See generally Gonzalez v. Freeman,* 118 U.S.App.D.C. 180, 334 F.2d 570, 576–77 (1964). Furthermore, the SBA's regulations state: "In no event may the acceptance or approval of a business plan by SBA be construed as a commitment by SBA to award a single contract, a continuing series of contracts or provide any other assistance, contractual or otherwise." 13 C.F.R. § 124.8–2(a) (1977).

As stated above, the applicable statute confers upon the SBA a great deal of discretion in implementing the Section 8(a) Program and in awarding subcontracts thereunder. Whatever property interest may be created by certification of a firm for 8(a) status, it is a relatively low-order interest whose potential deprivation is not of such a degree as to constitutionally require a hearing prior to termination. For similar reasons, the Court is unable to find that there has been a substantial showing that the procedures which are to be provided plaintiffs are themselves inadequate.

The Supreme Court's 1976 decision in *Mathews v. Eldridge* makes it abundantly clear that a determination that a liberty or property interest is involved is merely a first step in the constitutional inquiry. *See* 424 U.S. 319, 333–35, 96 S.Ct. 893, 47 L.Ed.2d 18. The often more difficult question is what process is due, given all the interests, private and governmental, which are implicated in a given case. Without engaging in a lengthy analysis of the balance of factors which *Eldridge* requires to be applied, suffice it to say that the Court has strong doubts whether plaintiffs can sustain their argument that prior hearing is required in light of the nature of the statutory entitlement involved in this case. The Court concludes that plaintiffs have failed to make a substantial case on the merits of this claim.

d. Other Considerations

Although plaintiffs' motion for a preliminary injunction could be denied solely due to the lack of a substantial showing on the merits, the Court is also unable to find a strong showing on other elements of the *Holiday Tours* test. If the injunction were to issue, but it were eventually determined that plaintiffs are ineligible for the program, injury to other interested parties, or

to the public interest, would necessarily result. Any section 8(a) contract awarded to plaintiffs during the pendency of this litigation would probably mean that another qualified 8(a) firm would be denied the contract. If no other 8(a) firm were available, it would mean that competitive bidding procedures were evaded without good cause. Furthermore, although there may be some degree of irreparable injury to plaintiffs flowing from permanent loss of contracts awarded to other firms, the administrative process to be afforded here is not a lengthy one and plaintiffs are in no way prohibited from pursuing contracts on a competitive basis. Finally, the degree of possible irreparable injury to plaintiffs will be confined by the Court's order that the government complete its administrative proceedings within 60 days.

*Exhaustion of Administrative Remedies*

██ The Court also finds that an exercise of its sound discretion requires that plaintiffs exhaust their administrative remedies before the SBA prior to requesting judicial intervention. *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). With regard to the ultimate merits of this case—the determination whether Mr. Thomas and his firm are eligible for the program as a result of Thomas's social or economic disadvantage— there is simply no way in which this Court could take up this question in the first instance. The guidelines and standards to be applied in making this determination are not only within an area of agency expertise, but more important, are matters over which Congress has given the agency broad discretion.

██ Plaintiffs argue that the mere presence of statutory and constitutional questions in this case, and the concomitant possibility of loss of statutory and constitutional rights, is a sufficient underpinning for a finding of irreparable injury requiring immediate judicial intervention. This overly broad proposition has been frequently re-

jected by the Supreme Court. *See generally Moore v. City of East Cleveland,* 431 U.S. 494, 522, 97 S.Ct. 1932, 1948, 52 L.Ed.2d 531, 553 (1977) (Burger, C. J., dissenting). It is only where the asserted injury includes the potential loss of *substantive* constitutional rights, where the prescribed administrative remedy is inadequate to protect those rights, and where the threatened loss flowing from the delay would be irreparable that interim judicial relief is warranted in the face of existing administrative remedies. *Id.* 431 U.S. at 527, 97 S.Ct. at 1950, 52 L.Ed.2d at 554, *citing Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

Plaintiffs have not made a substantial showing regarding the threatened loss of substantive constitutional rights. In fact plaintiffs have not even alleged irreparable injury to such rights. For all the foregoing reasons, the Court will order that this action be stayed pending exhaustion of plaintiffs' administrative remedies.

*Judicial Review of the Final Agency Action*

Nothing in this opinion should be construed by the SBA as an authorization to perfunctorily complete its review process with plaintiffs' final termination. When the administrative process is completed, plaintiffs will have an opportunity to amend their complaint in order to secure judicial review of the agency decision on the merits. They will also be able to renew any or all of the claims raised in the original complaint in light of the actual agency actions.

Although the agency is operating in an area of discretion in the formulation of standards and guidelines, this Court will insist on a threshold agency articulation of the standards or criteria which it utilizes in making its determination of eligibility under 13 C.F.R. § 124.8–1 (1977). Otherwise, the Court would have no way of evaluating whether the agency action is arbitrary, capricious, or otherwise unlawful.[8] *See*

---

8. Although, under the APA, the Court will not be engaging in a substantial evidence type review, an agency statement of its findings of fact and conclusions of law would be very helpful in making the 5 U.S.C. § 706(2)(A) determination.

*NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1972); *Environmental Defense Fund v. Ruckelshaus*, 142 U.S.App.D.C. 74, 439 F.2d 584, 597–98 (1971).

Furthermore, the plaintiffs must be given a meaningful opportunity to argue the facts of their case in light of the standards which the agency actually utilizes. This will require, at a minimum, that standards be articulated at the district or regional level so that any appeal to the Board of Appeals will be more than an empty exercise. Finally, any departures from past agency policy, standards, or decisions, must be accompanied by a "reasoned analysis, indicating that prior policies and standards are being deliberately changed, not casually ignored . . . ." *Greater Boston Television Corp. v. FCC*, 143 U.S.App.D.C. 383, 392, 444 F.2d 841, 852 (1970); *see Commonwealth of Pennsylvania v. ICC*, 561 F.2d 278 (D.C. Cir. 1977).

The Court will review the actual administrative record, if plaintiffs are unsuccessful, to determine whether the requirements of due process and of the APA were in fact complied with. If the administrative decision is found to have been unlawful for any reason, the Court will take appropriate action.

### SUPPLEMENTAL MEMORANDUM

On November 18, 1977 this Court denied plaintiffs' application for a preliminary injunction and stayed further proceedings pending plaintiffs' exhaustion of their administrative remedies before the Small Business Administration (SBA). In addition, the SBA was directed to complete its administrative review process within sixty days of the November 18 order—January 17, 1978.

The action is now before the Court on plaintiffs' motion to dissolve the stay and for an order to show cause why defendants should not be held in contempt of the November 18 order. At oral argument, the Court was informed that the plaintiffs have recently noted an appeal from that order. As a preliminary matter, the government contends that the noting of the appeal divests this Court of jurisdiction to consider the instant motion. The Court cannot agree.

■ Although an appeal from a final judgment may have such an effect, the appeal in this action is from an interlocutory order, the denial of an application for a preliminary injunction. In such circumstances, a federal district court is not divested of power to take continuing action in the underlying case. *See, e.g., Society for Animal Rights, Inc. v. Schlesinger*, 168 U.S. App.D.C. 1, 4, 512 F.2d 915, 918 (1975); *Janousek v. Doyle*, 313 F.2d 916, 920 (8th Cir. 1963); 16 C. Wright & A. Miller, Federal Practice and Procedure § 3921, at 25–28 (1977). *See also* Fed.R.Civ.P. 62(c).

Turning to the merits of the instant motion, the critical question appears to be whether the SBA has ignored, or clearly intends to ignore, the Court's admonishment to make a threshold "articulation of the standards or criteria which it utilizes in making its determination of eligibility under 13 C.F.R. § 124.8–1 (1977)." Opinion at 249. In a December 7, 1977 letter, the SBA, apparently for the first time, made it clear to plaintiffs that the standards to be applied would be the eligibility criteria set forth in paragraph 18 of an informally published operating manual. SBA, Office of Business Development, Section 8(a) Program Standard Operating Procedures at 30–32, para. 18 (Feb. 2, 1976). The government had not identified any operative standards in its original opposition to plaintiffs' application for preliminary injunctive relief; the Court was unaware of the existence of the paragraph 18 criteria until reviewing the SBA's opposition to the instant motion. The plaintiffs should not, therefore, read this Court's November opinion as making an implicit determination of the inadequacy or unlawfulness of these criteria. The paragraph 18 standards are rather detailed, and are not in apparent conflict

with the substantive regulation set out in 13 C.F.R. § 124.8–1.

There is no reason to fault the agency for pointing to the eligibility standards as the standards which will be applied in this case. The Court's opinion did not direct, and plaintiffs have not contended, that the SBA should engage in formal rulemaking proceedings in order to make its "threshold articulation of standards." Administrative agencies are not required to resort to the formal rulemaking procedures of 5 U.S.C. § 553 (1976), *i.e.*, legislative type rulemaking, in order to develop and articulate all policies, procedures, and interpretive rules. As stated in 5 U.S.C. § 553(b): "Except when [formal rulemaking procedures are] required by statute, this subsection does not apply—(A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice . . . ."

Where 5 U.S.C. § 553 is inapplicable, the only general statutory requirement for formal publication or advance notice of agency policy, rules, or guidelines is contained in 5 U.S.C. § 552(a)(1)(1976). But that subsection does not require advance publication to the extent that a person has "actual and timely notice" of a matter by which he may be adversely affected. *See* Opinion at 247. Plaintiffs had actual notice of the standards in paragraph 18 at least by the time of the December 7 letter, and it was at that time that the agency review process was deemed to have formally commenced.

Furthermore, it is well established that agencies may articulate policies, interpret rules, and develop guidelines in the course of adjudicative proceedings, so long as adjudication is not used as a substitute for substantive, legislative rulemaking. *See generally NLRB v. Wyman-Gordon*, 394 U.S. 759, 764–65 & 770–73, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion and concurring opinion by Black, J.). The Court's November 18 opinion required the SBA to articulate, not promulgate, whatever standards it in fact utilized in reviewing plaintiffs' eligibility. The Court contemplated that those standards would be defined in the course of the agency review.

Now that the SBA has identified a detailed, although informally published, set of eligibility criteria as the standards to be applied in this termination proceeding, the Court's goal of insuring adequate notice to plaintiffs and an adequate basis for later judicial review has been satisfied. *See* Opinion at 249–250.

Plaintiffs' remaining arguments concerning the basic power of the agency to terminate participants in the 8(a) Program for reasons other than those now stated in the termination provisions of the standard operating procedures were considered at the time of their initial application for injunctive relief and are not properly before the Court.

Finally, the government concedes that it will not complete the administrative review process within the sixty-day period imposed by the Court. The agency should be given a short extension of time to compensate for the period over which the instant motion was pending before the Court (twenty-five days). To insure that the SBA is making a good faith effort to comply with the extended deadline, the defendants will be directed to file weekly status reports with the Court. An appropriate order will issue of even date herewith.