**COALITION FOR LOWER BEAUFORT COUNTY et al., Plaintiffs,**

v.

**Clifford L. ALEXANDER, Jr., Secretary of the Army, et al., Defendants,**

and

**Chicago Bridge & Iron Company, Intervening Defendant.**

Civ. A. No. 77–0217.

United States District Court, District of Columbia.

May 26, 1977.

Frederick L. Miller, Jr., Washington, D. C., for plaintiffs.

Tim E. Sleeth, Dept. of Justice, Washington, D. C., for defendants.

Fred F. Fielding, Washington, D. C., Charles O. Ziemer, Oak Brook, Ill., for intervening defendant.

## FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

GESELL, District Judge.

Plaintiffs in this equity action, which was tried to the Court on the administrative record and subsequent affidavits, seek to set aside a permit granted by the Secretary of the Army at the instance of the Corps of Engineers. They claim that the Army failed to comply with the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321, *et seq.* The permit, issued to intervenor Chicago Bridge & Iron Company ("CBI") on February 16, 1977, allowed dredging and construction of an 850-foot pier at Victoria Bluff, South Carolina, situated near the Colleton River in Beaufort County. The pier is intended to accommodate a new CBI 1,000-ton derrick and large metal plate plant to be erected at this location. Plaintiffs are an association of some 5,000 local residents, many of whom have a continuing interest in conservation, and various established conservation and environmental groups. The coastal area in which the contemplated CBI project would be located is characterized by stretches of tidal marsh and waterways, and supports much wildlife. The community also contains many retirement residences, and is devoted primarily to agriculture and fishing.

Plaintiffs are making a serious effort to preserve a way of life in this relatively unspoiled area of the Atlantic Coast. They envision injury to endangered species and destruction of the location's ecological integrity and aesthetics. The new plant is viewed as a portent of further industrialization which will eventually overwhelm the quiet and peace of this community where many residents have come to appreciate the pleasures of its relatively simple living and the benefits of its unexploited natural qualities.

The State of South Carolina is conscious of these desirable conditions but sees a need for limited development of the area as a deep water industrial port to improve its employment and economy. Substantial land has been dedicated by the State to wildlife preservation in the immediate area. Other land is held by large estates. CBI will hire many local citizens as welders after providing the necessary training. This work is sorely needed since employment is low and the area is economically depressed. Various local chapters of the NAACP appeared in this proceeding as *amicus* and urged that the project go forward.

CBI, conscious of these conflicting considerations, has sought to accommodate environmental and conservation attitudes by setting up a substantial buffer zone around the plant which will substantially aid preservation of the existing ecology. The plant itself is conceded to cause no pollution of the water or air.

This delicate and difficult situation has been under continuous appraisal for several years. Many reports have been written and public hearings at various stages have occurred. The permit was approved by the Secretary of the Army in the dying moments of the last Administration and subsequently the grant of the permit was endorsed by Secretary of the Army Alexander.

The Court has thoroughly reviewed the course of the procedures followed which is accurately summarized in the proposed findings of fact submitted by CBI, which the Court adopts as its own and incorporates herein by reference. The record conclusively establishes that the Corps of Engineers acted independently of the company seeking the permit, carefully evaluated information supplied by the company, and brought analysis of additional relevant environmental considerations to bear on the final decision. The fact that much of the company's submission was quoted verbatim is irrelevant. There was independent consideration of the underlying facts.

Plaintiffs have failed to establish procedural irregularities. The record reflects continuous and meticulous consideration of all relevant environmental factors at the various stages of decision within the Corps of Engineers. The Environmental Impact Statement ("EIS") for the project was re-

vised and supplemented on a number of occasions as data were accumulated through several public hearings and numerous submissions by interested groups.[1]

■ Plaintiffs make much of the fact that a final recommendation went forward from the District Engineer, Colonel Wilson, without his consideration of the Final Supplement to the EIS. In making this recommendation Colonel Wilson considered not only the EIS, but the Draft Supplement, the Revised Draft Supplement (which included comments on the Draft Supplement), and other materials.

NEPA requires that the environmental consequences of major federal actions be given thorough consideration "at every important stage in the decision making process." *Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission,* 146 U.S. App.D.C. 33, 449 F.2d 1109, 1118 (1971). However, the Act was not intended to create a bureaucratic nightmare in which form rather than substance governs. There is no doubt that the environmental consequences of the CBI project received full and careful consideration at the District Engineer level. The Final Supplement contained no significant information not already before the District Engineer in the Revised Draft Supplement. Furthermore, the Final Supplement and comments thereto were considered by Colonel Wilson's superiors before final approval was given to CBI. The failure of Wilson to consider the Final Supplement was at most a technical deviation in procedure. In any case it was of no consequence given the lengthy processing of this permit which ventilated all pertinent environmental considerations and brought them effectively to the attention of the deciding officials at all levels.

■ Plaintiffs also allege that defendants failed adequately to consider the long-range socioeconomic and economic repercussions which will necessarily flow from the permit grant. However, all immediate factors were appraised.

The CBI plant will not require any influx of workers after the construction phase. Local labor will be trained and hired for the welding. There are, though, two contiguous sites available for industrial expansion. A large tract is held by trustees who apparently have no present plans for development and who, in any event, can make no commitment. The other tract is owned by CBI and lies outside the buffer zone. Its future is uncertain. Future industrial development of some kind is likely. Yet there is little about such development that is not remote or speculative. Thus there is nothing sufficiently foreseeable to be appraised by an environmental study. Nothing suggests that the benefit to the general standard of living that may accrue in some quarters needs to receive environmental analysis. Such immediate and foreseeable socioeconomic and economic repercussions as could be considered under the circumstances were appraised for their environmental impact, and this is all the Act requires. There will be other ramifications of a secondary nature but there is no indication these are sufficiently concrete or ascertainable as to be anything but speculative as to impact.[2]

■ Many alternative sites were considered and rejected. Plaintiffs place considerable emphasis upon the alleged failure of the Corps of Engineers to consider a site

---

1. The administrative process included the following:

    (1) Public notice—April 1973

    (2) Public hearing—July 1973

    (3) Draft EIS released for public comment—December 1973

    (4) Public review and comment period on Draft EIS—until February 1974

    (5) Final EIS—December 1974

    (6) Public hearing—February 1975

    (7) Draft Supplement to EIS released for public comment—August 1975

    (8) Public hearing—September 1975

    (9) Revised Draft Supplement to EIS released for public comment—March 1976

    (10) Public review and comment period on Revised Draft Supplement—until May 1976

    (11) Final Supplement to EIS—completed June 1976, approved November 1976.

2. *See, e. g., Kleppe v. Sierra Club,* 427 U.S. 390 at n.20, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

at Suffolk, Virginia, which lies approximately 25 miles north of the North Carolina border and therefore outside of the coastal area designated by CBI as the area within which it sought a permit to construct a plant. The fact CBI owns industrial property at Suffolk was brought to the Corps' attention by plaintiffs. The Corps considered the site and determined that the Suffolk area did not warrant consideration as an appropriate alternative. The Suffolk property of CBI is located three nautical miles away from the nearest water sufficiently deep to accommodate ocean-going vessels. A three-mile channel would have had to be dredged from the nearest point in the Hampton Roads channel to reach the property and thus the site was foreclosed by expense, to say nothing of other serious navigational and environmental questions which would necessarily arise. The Suffolk property was being held by CBI for wholly unrelated purposes and was not suitable to its needs in seeking the permit. Elimination of this site as an alternative was not arbitrary.

Finally, it is suggested that the Secretary did not adequately weigh the comments of other interested federal agencies. Again the record is to the contrary. There is substantial evidence in the record that the comments of other agencies were reviewed and considered; in the process both the Army's position and the position of other agencies were modified. As the matter proceeded, there was increasing uniformity as to most environmental issues. NEPA does not require that all federal agencies be in complete agreement concerning any project. The conduct of the Army was in no way arbitrary in this regard.

No violation of the Act having been shown, the complaint is dismissed.

SO ORDERED.