Tom MATSUMOTO et al.,
Plaintiffs-Appellants,

v.

Claude S. BRINEGAR et al.,
Defendants-Appellees.

No. 75–2245.

United States Court of Appeals,
Ninth Circuit.

Feb. 1, 1978.

Richard H. Greener, of Webb, Johnson, Tway, Redford & Greener, Boise, Idaho, for plaintiffs-appellants.

John J. Zimmerman, Dept. of Justice, Washington, D. C., for defendants-appellees.

Before MERRILL and TRASK, Circuit Judges, and TAKASUGI,* District Judge.

* Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

TRASK, Circuit Judge:

Individual residents of Canyon County, Idaho, who own or farm land which is being acquired by the city of Caldwell, Idaho for the proposed Caldwell Industrial Airport have filed this action to enjoin any further construction activity or development of the airport project. The defendants are the Secretary of the United States Department of Transportation, the City of Caldwell, an incorporated municipality, and the Mayor of the City of Caldwell. The action was predicated upon an alleged failure of the defendants to comply with the requirements of the National Environmental Policy Act (NEPA) which mandates that an Environmental Impact Statement (EIS) be filed before any major federal action is taken which significantly affects the quality of the human environment. 42 U.S.C. § 4321 *et seq.* A final EIS was filed, but plaintiffs argue that it does not satisfy the requirements for such statements established by the decisions of this court and other federal courts.

A preliminary injunction was denied whereupon the plaintiffs filed an amended complaint adding a second claim based upon the Airport and Airway Development Act of 1976, 49 U.S.C. § 1711 *et seq.* (AADA), which provides that fair consideration be given to local community interests before airport development may be approved by the Secretary of Transportation, and that hearings be held for the purpose of determining the economic, social and environmental effects of the airport location and its consistency with local urban planning. Plaintiffs claim that a public hearing held by the city failed to meet the standards of the AADA and that the Secretary failed to comply with an AADA requirement that a finding be made that the airport project is reasonably consistent with plans of planning agencies for the development of the project.

A trial was held before the district court without a jury; the court filed Findings of Fact and Conclusions of Law denying all relief and this appeal was timely taken. We affirm.

■ We have held that NEPA is essentially a procedural act. *Trout Unlimited v. Morton,* 509 F.2d 1276, 1282 (9th Cir. 1974); *Jicarilla Apache Tribe v. Morton,* 471 F.2d 1275, 1280–81 (9th Cir. 1973). In considering proposed government action, which significantly affects the quality of our environment, the decision-makers should have placed before them during the decision-making process a complete statement of the effect of the proposed action including the comparative effect of no action at all. With that information the decision, good or bad, may be made.

■ Review of the decision on the merits of the proposal is not required by NEPA. The project when finished may be a complete blunder—NEPA insists that it be a knowledgeable blunder. To do this it requires an environmental impact statement to be prepared and made available to the decision-maker or agency and to the public. The Administrative Procedure Act sets out the scope of review of the EIS. It provides the following at 5 U.S.C. § 706(2)(D):

"The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

. . . . .

(D) without observance of procedure required by law."

This does not mean that the findings and conclusions of the decision-makers must be analyzed to determine which of two or more alternatives may be better. It only requires that they must have been available for consideration in the EIS. *Trout Unlimited v. Morton,* 509 F.2d 1276 (9th Cir. 1974); *Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974) (En Banc). We said in *Lathan v. Brinegar,* 506 F.2d at 693:

"We stand on section 706(2)(D) because NEPA is essentially a procedural statute. Its purpose is to assure that, by following the procedures that it prescribes, agencies will be fully aware of the impact of their decisions when they make them."

*Trout Unlimited v. Morton,* 509 F.2d at 1283, followed shortly thereafter, saying:

"[A]n EIS is in compliance with NEPA when its form, content, and preparation substantially (1) provide decision-makers with an environmental disclosure sufficiently detailed to aid in the substantive decision whether to proceed with the project in the light of its environmental consequences, and (2) make available to the public, information of the proposed project's environmental impact and encourage public participation in the development of that information."

A draft EIS was made available for comment on December 13, 1974, and comments were solicited. None were received from the appellees. The final EIS was sent to the Council on Environmental Quality and made available to the public on August 28, 1974. The EIS described seven alternative airport sites. In the draft EIS there was described the effects of no airport at all, pointing out that the existing airport was within the city limits creating a safety hazard and making expansion a virtual impossibility. The trial court found:

"VII

The site of the projected Caldwell Industrial Air Park was selected from eight sites in the Caldwell-Canyon County area. The site selection process included a site selection study which was admitted as Plaintiffs' Exhibit 8 in the trial. The study did not include a formal Environmental Impact Assessment or Statement on any of the alternatives other than the site selected for the project, i. e., Site 8; however, included in the Site Selection Study were many environmental considerations of the several sites. The Site Selection Study was professionally com-

pleted and adequately discussed and considered all relevant factors and the result was supported by the facts contained in the Study."

The EIS was presented to and approved by the Acting Assistant Secretary for Transportation, Glen Sedam, after having circulated through the appropriate administrative review bodies.[1] A public hearing was held on September 5, 1973, and the appellants in this action were present and spoke as well as other opponents and proponents in a fairly conducted meeting.[2]

Conclusions of Law were filed which included a statement that a cost-benefit "formalized and quantified in dollars" was not required under NEPA in this case. The court also pointed out that the acquisition of appellant's land does not constitute irreparable damage where just and adequate compensation must be paid to the landowners whose land will be taken. The court finally concluded that Title 5 U.S.C. § 706(2)(D) of the Administrative Procedure Act and section 1716(c)(3) of the Airport and Airway Development Act of 1970[3] had been given consideration and complied with.

■ We agree with the decision of the district judge. The EIS has been reviewed carefully, including the final draft, and we believe it to have been entirely sufficient under the appropriate tests by which it is measured. The judgment of the district court is AFFIRMED.

---

1. Findings of Fact, item VIII:

"The Environmental Impact Assessment, which was the basis for the Draft Environmental Impact Statement, was prepared by Alpha Engineers, Inc. of Caldwell, Idaho. The Environmental Impact Statement was approved by the Acting Assistant Secretary for Environment, Safety and Consumer Affairs, Department of Transportation, Glen Sedam, on August 28, 1974, after having been channeled through the appropriate and correct administrative review process and consideration having been given to the comments submitted on the Draft Environmental

Impact Statement by various Federal, State and local agencies."

2. The trial court considered a technical error in the legal description and found that no one was misled or harmed as a result of the typographical error.

3. Section 1716(c)(3) of the AADA provides that "No airport development project may be approved by the Secretary unless he is satisfied that fair consideration has been given to the interest of communities in or near which the project may be located."