**RANDOLPH CIVIC ASSOCIATION et al., Plaintiffs,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY et al., Defendants.**

Civ. A. No. 78–1621.

United States District Court, District of Columbia.

April 25, 1979.

Gary Howard Simpson, Bethesda, Md., for plaintiffs.

Peter J. Ciano, Washington, D. C., Dennis A. Dutterer, Asst. U. S. Atty., Washington, D. C., for defendants.

OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This action is one for injunctive and declaratory relief against alleged noncompliance with the environmental statement (EIS) requirements of § 102(c) of the National Environmental Protection Act (NEPA), 42 U.S.C. § 4332 (1977). Plaintiff is seeking a preliminary injunction to halt the construction of a proposed Metrobus Garage and Maintenance Facility for 250 buses in Montgomery County, Maryland. Funds for land acquisition, engineering and design of this facility are being provided in part by a grant from the Urban Mass Transportation Administration (UMTA) of the U.S. Department of Transportation pursuant to 49 U.S.C. §§ 1601, et seq. The matter is before the Court on: (1) plaintiffs' motion for a preliminary injunction; (2) plaintiffs' motion to strike; and (3) defendants' motion to dismiss or for summary judgment.

A 1974 study (Memo 9) commissioned by the Washington Metropolitan Area Transit Authority (WMATA) recommended the construction of five to six new bus garages, with one to be located in Montgomery County within the vicinity of Rockville Pike, Old Georgetown Road and I–70S (now I–270). This study also established locational criteria to be used for evaluating possible sites for the proposed garages.

The selection process for the Montgomery County site began in early 1974 when WMATA, Maryland National Capital Park and Planning Commission and Montgomery County Department of Transportation formed a joint committee entitled "Bus Ga-

rage and Storage Facility Locating Committee" which considered a list of 106 sites. Utilizing the criteria developed in the Memo 9 study, the list was narrowed first to nine alternatives, of which four were eliminated after a field survey. On December 19, 1974, the WMATA Board of Directors adopted the recommendation of a commissioned study by the Architectural Planning Research Associates that three of the five sites be studied further.

The results of this subsequent research contained a detailed operational and environmental analysis of these three sites as well as various alternatives to the proposed project: (1) the No Action Alternative which would simply maintain existing garage facilities; (2) the No New Garage alternative which would result in expansion of existing garage facilities; (3) the No Build Alternative which would expand the garage system without building the facility at issue and (4) a New Location Facility which considered alternative sites not previously evaluated.

A public hearing on the project, attended by plaintiffs, was held on March 30, 1976, and written comments were accepted for ten days thereafter. Subsequent to the hearing, the Montgomery County Council followed its staff's recommendation and, on July 13, 1975, adopted the Dodge Modified site. The WMATA Board approved this location on July 29, 1976.

Pursuant to its grant application to UMTA in June 1977, WMATA circulated a draft EIS to appropriate agencies, which had 75 days to file comments. A final EIS, circulated on January 11, 1978, received no agency referrals to the Council on Environmental Quality during the 30 days review period. On June 12, 1978, it was determined that the project complied with NEPA and the UMT Act, and the federal defendant approved initial funds for the project in the amount of $4,175,200.

■ Plaintiffs have alleged that they reside or represent people who reside in the geographic area upon which the proposed project will have adverse impacts of noise and air pollution, increased traffic hazards

and congestion, possible flooding from water runoffs and economic consequences of wasted fuel and inefficient bus operation. The relief requested would have the result of insuring that the defendant agencies satisfied the requirements of NEPA by taking a hard look at the environmental consequences of their substantive decision. *Concerned About Trident v. Rumsfeld*, 180 U.S.App.D.C. 345, 352, 555 F.2d 817, 824 (1977). As such, plaintiffs have satisfied the standing requirements recently articulated in *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 71–82, 98 S.Ct. 2620, 2629–2635, 57 L.Ed.2d 595, 610–616 (1978), by demonstrating a concrete and particularized injury in fact within the zone of interests protected by NEPA. This injury has a substantial likelihood of redress if the requested relief is granted.

Section 4 of the Act of November 6, 1966, 80 Stat. 1324, 1353 generally gives this court jurisdiction over actions by and against WMATA. Further, it is well established that non-federal parties may be enjoined pending completion of an EIS, where those non-federal entities have entered into a partnership or joint venture with the federal government as recipients of federal funding. *Biderman v. Morton*, 497 F.2d 1141, 1147 (2d Cir. 1974); *Dalsis v. Hills*, 424 F.Supp. 748 (W.D.N.Y.1976). Consequently, the Court has jurisdiction over both defendants in this suit.

■ Defendants raise the doctrine of laches as a defense to this action. However, no final administrative action reviewable by this Court occurred until June 12, 1978, when the final EIS was filed. Plaintiff commenced this action only two months later, long before irrevocable action on the project has been undertaken. *See, Committee to Stop Route 7 v. Volpe*, 346 F.Supp. 731 (D.Conn.1972); *Concerned About Trident v. Schlesinger*, D.C., 400 F.Supp. 454, 478–9 (1975), *rev'd in part on other grounds*, 180 U.S.App.D.C. 345, 555 F.2d 817 (1977). Moreover, defendants admit plaintiffs have taken part in the proceedings by testimony and written comments. Clearly, the doctrine of laches does not apply: Plaintiffs

have not knowingly slept on their rights, thereby prejudicing defendants. *See, Concerned About Trident v. Schlesinger, supra* at 480.

■ Plaintiffs have moved to strike all non-final EIS documents. Although the final EIS must contain a complete statement of the material contemplated in NEPA, it is clearly permissible for the statement to incorporate by reference previous studies and supporting documents so long as that material, as it is here, is available and accessible to the public and reviewing agencies. *Sierra Club v. Adams*, 188 U.S.App.D.C. 147, 152, 578 F.2d 389, 394 (1972); *Trout Unlimited v. Morton*, 509 F.2d 1276, 1284 (9th Cir. 1974); *Philadelphia Council of Neighborhood Organizations v. Coleman*, 437 F.Supp. 1341, 1366 (E.D.Pa.1977) *aff'd* 578 F.2d 1375 (3d Cir. 1978). *See, also, Natural Resources Defense Council v. Morton*, 148 U.S.App. D.C. 5, 15–16, 458 F.2d 827, 837–838 (1972). Additionally, since the defendants are seeking to support, not supplement, the conclusions of the EIS and may submit documents identified by affidavit in support of their motion for summary judgment, the documents will not be stricken. *See, Upper W. Forks Watershed v. Corps of Engineers*, 414 F.Supp. 908 (N.D.W.Va.1976), *aff'd* 556 F.2d 576 (4th Cir. 1977).

For a preliminary injunction to be issued, plaintiffs must satisfy the four part test set forth in *Virginia Petroleum Jobbers Association v. F. P. C.*, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), by showing: (1) a likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) a lack of harm to the other parties if the injunction is granted; and (4) that the public interest favors the granting of a preliminary injunction. *See, e. g., Pack v. Army Corps of Engineers of the United States Army*, 428 F.Supp. 460 (M.D.Fla.1977).

To prevail on the merits and establish the deficiency of the EIS, the plaintiffs bear the burden of proof to overcome the presumption of validity to which decisions of administrative bodies are entitled and to demonstrate under a test of reasonableness that the agencies have not observed the

required procedures under NEPA. *Natural Resources Defense Council v. Morton, supra*, 148 U.S.App.D.C. at 15, 458 F.2d at 837; *Sierra Club v. Adams, supra*, 188 U.S. App.D.C. at 151, 578 F.2d at 393; *Matsumoto v. Brinegar*, 568 F.2d 1289, 1290 (9th Cir. 1978); *Birnberg v. Washington Metropolitan Transit Authority*, 389 F.Supp. 340, 343 (D.D.C.1975).

■ Plaintiffs allege that defendants have failed in the final EIS to adequately consider alternatives to the proposed project. However, it is well established that defendants are not required to engage in a "crystal ball" inquiry or consider alternatives of "speculative feasibility" which do not satisfy the project's requirements. *Natural Resources Defense Council v. Morton, supra*, 148 U.S.App.D.C. at 15, 458 F.2d at 837; *Concerned About Trident v. Rumsfeld, supra* 180 U.S.App.D.C. at 354, 555 F.2d at 825; *Coalition for Lower Beaufort County v. Alexander*, 434 F.Supp. 293 (D.D.C.1977) aff'd 189 U.S.App.D.C. 558, 584 F.2d 558 (1978). Additionally, detailed discussion of the environmental effects of alternatives put forward in outside comments, when these effects cannot be readily ascertained and the alternatives are deemed only remote and speculative possibilities, is not required under NEPA. *See, Natural Resources Defense Council v. Morton, supra* 148 U.S.App.D.C. at 15–16, 458 F.2d at 837–8.

After a complete examination of the EIS and the procedures followed by the agency, the Court concludes that the defendants have substantially complied with the procedural requirements of NEPA at every stage in this decision-making process and have acted with objective good faith in compiling the EIS. *See, Concerned About Trident v. Rumsfeld, supra* 180 U.S.App.D.C. at 355, 555 F.2d at 827; *Coalition for Lower Beaufort County v. Alexander, supra*. The resulting statement considers the environmental effects as far ahead as 1982 and evaluates thoroughly three alternative sites, as well as other No Build Alternatives. Therefore, it manifests a careful consideration of both the short- and long-term environmental effects of the project and of the reasonable alternatives available to permit the decisionmakers to fully consider and balance the environmental factors. *Kleppe v. Sierra Club*, 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976).

In addition, plaintiffs have not satisfied the remaining requirements of *Virginia Petroleum Jobbers*. First, there has not been an adequate showing of irreparable injury to plaintiffs. Second, substantial harm will result to defendants and to the public interest if this integrated and ongoing public project is halted by a preliminary injunction. *See, East 63rd Street Association v. Coleman*, 414 F.Supp. 1318, 1331 (S.D.N.Y. 1976); *Pack v. Corps of Engineers of United States Army, supra* at 467; *Society for Animal Rights, Inc. v. Schlesinger*, 168 U.S. App.D.C. 1, 512 F.2d 915 (1975). For these reasons, plaintiff's motion for a preliminary injunction is denied.

The defendants' motion for summary judgment may properly be granted if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *National Cable Television v. F. C. C.*, 156 U.S.App. D.C. 91, 479 F.2d 183 (1973). To successfully oppose defendants' motion, plaintiffs must meet the defendants' evidence with concrete and specific facts showing there is an issue for trial. Plaintiffs have not done so here. Therefore, because this action does not present conflicting factual inferences of a material nature nor issues of credibility of witnesses, but focuses on administrative action which is clearly and undisputedly documented, it is one where summary judgment procedure has especial utility. *See, Upper West Fork River Watershed Association v. Army Corps of Engineers of United States Army, supra; Philadelphia Council of Neighborhood v. Coleman, supra; See, also, Sierra Club v. Adams, supra* 188 U.S.App. D.C. at 154, 578 F.2d at 393.

Applying the test of reasonableness, the Court has carefully reviewed the administrative record of this case. *See, Sierra Club v. Adams, supra*. The EIS constitutes a sufficient, objective and good faith compila-

tion of the long- and short-term environmental effects of the proposed project and available alternatives. As such no violation of NEPA has been shown. *See, Coalition for Lower Beaufort County v. Alexander, supra; Sierra Club v. Adams, supra* 188 U.S.App.D.C. at 152, 578 F.2d at 394.

Accordingly, plaintiffs' motions to strike and for a preliminary injunction are denied and defendants' motion for summary judgment is granted.